# Gemini Earn Program Terms and Authorization Agreement

Last updated: December 14, 2022

---

Gemini Earn (the "Program") is a program that allows customers ("you" or "your") of Gemini Trust Company, LLC ("Gemini," "we," "us" or "our") to lend certain Digital Assets that you custody with us. In order to participate in the Program, you must agree to this Terms of Service and Authorization Agreement ("Authorization Agreement") and enter into one or more Master Loan Agreements ("Loan Agreements") with the borrowers disclosed on Schedule A ("Borrowers"). By choosing to participate in our Program, you acknowledge that you have read, understood and agreed to this Authorization Agreement.

## 1. PROGRAM RISKS

- YOUR AVAILABLE DIGITAL ASSETS WILL LEAVE OUR CUSTODY, AND YOU ACCEPT THE RISK OF LOSS ASSOCIATED WITH LOAN TRANSACTIONS, UP TO, AND INCLUDING, TOTAL LOSS OF YOUR AVAILABLE DIGITAL ASSETS.
  - We are not a depository institution, and our Program does not offer a depository account. Participating in our Program may put your Digital Assets at risk.
  - Loans made through our Program may not be secured. As a Lender, you understand that you have exposure to Borrower credit risk. Borrowers are not required to post collateral to you or to us, however, they may require collateral to secure loans that they themselves make.

- Transactions in Digital Assets may carry added risk compared to lending of other types of assets because transactions in cryptocurrency are in many cases irreversible. Funds may not be recoverable in the event of errors or fraudulent activity.
- We are not a principal to any Loan, and we have no obligation or ability to return the Loaned Digital Assets from your Borrower in the event of a Borrower default.
- The Borrower is not required to custody or maintain the Loaned Digital Assets with us or any other Gemini-controlled account. You understand that we cannot be and are not responsible for any Digital Assets once they leave our custody.
- You understand that Loans are not insured by us or any governmental program or institution and that we do not assume any market or investment risk of loss associated with your Participation in our Program. Your Available Digital Assets may decline in value during the term of a Loan or the applicable callback period.
- Loan Fees are variable and subject to change. Loan Fees may decline over time and we cannot guarantee that you will earn any particular rate of return on your Available Digital Assets by making Loans.
- You are responsible for determining any taxes you may owe as a result of your participation in our Program. You should consult a tax advisor if you have questions about the tax implications of our Program or any other digital asset transactions.

## 2. Participation in our Program

By participating in our Program, you represent and affirm that you are at least 18 years old, have the legal capacity to enter into this Authorization Agreement, and agree to be legally bound by the terms and conditions of this Authorization Agreement in their entirety.

You agree and understand that this Authorization Agreement is subject to the terms and conditions set forth in our User Agreement, which also govern this Authorization Agreement. In case of conflict, the User Agreement shall control. You further agree and understand that the defined terms used in this

Authorization Agreement, if defined in our User Agreement, shall have the meanings set forth in our User Agreement.

You agree and understand that we may change this Authorization Agreement from time to time. Your continued participation in the Program following any change or update shall constitute your agreement to the amended Authorization Agreement, and you agree to be legally bound by its terms and conditions as amended. You should, therefore, read this Authorization Agreement from time to time. You further agree and understand that we have the right to require your affirmative assent and continuing acceptance of this Authorization Agreement, from time to time, as a condition of your use of the Program. If you do not agree to be bound by this Authorization Agreement, you should not and cannot participate in the Program.

## 3. Appointment of Gemini as Your Agent

You hereby appoint and authorize Gemini as your agent to transfer on your behalf Digital Assets which you own and designate as available for lending by using the "Earn" function of the Program user interface, or that you otherwise transfer into our Program, and are listed as supported by the Program on Schedule B (in each case, "Available Digital Assets"), to Borrowers in accordance with the terms of this Agreement. We shall have the responsibility and authority to do or cause to be done all acts we shall determine to be desirable, necessary, or appropriate to implement and administer your authorization to lend Available Digital Assets through our Program. You acknowledge and agree that we are acting as a fully disclosed agent and not as principal in connection with the lending of your Available Digital Assets through our Program.

All lending by you through our Program will be on an unsecured basis. We will not collect or hold collateral from Borrowers, nor maintain any collateral account for your benefit.

We may, but are not required to, maintain a "liquidity reserve" on your behalf of up to thirty percent (30%) of your Available Digital Assets ("Reserve") in order to more quickly fund your Loan callback and withdrawal requests. We may maintain a Reserve by withholding any amount of Available Digital Assets you designate for a Loan. You appoint and authorize Gemini to adjust such Reserve from time to time based on demand and activity in the Program, number of available Borrowers, or any other criteria set by us in our reasonable discretion. Available Digital Assets that we hold as your Reserve will not be provided to a Borrower in any Loan, and will not accrue Loan Fees. We will exclude any Reserve, if applicable, from the calculation or the interest rate and/or other Loan Fees presented to you at the time a Loan is made. A Reserve is not collateral and will not be reinvested on your behalf.

## 4. Digital Asset Loan Agreements

In order to participate in our Program, you must enter into one or more Loan Agreements with Borrowers which set forth the terms for loans of your Available Digital Assets ("Loans"). We will present you with each available Loan Agreement for your electronic signature through the Program user interface. You are ultimately responsible for your adherence to the terms of a Loan Agreement, and you should review the terms carefully before you make any Loans.
Certain terms of individual Loans, such as the Loan's interest rate and term, may be negotiated at the time a Loan is made. You will be required to acknowledge the terms of each Loan electronically before we may disburse your Available Digital Assets to a Borrower.

## 5. Making Loans to Borrowers

Borrowers are your sole counterparty in our Program. You authorize us, upon your instruction through our Program user interface, to effect Loans with any Borrower with whom you have acknowledged and entered into a Loan Agreement. We shall

not be responsible for any statements, representations, warranties, or covenants made by any Borrower in connection with any Loan or for any Borrower's performance of or failure to perform the terms of any Loan under the applicable Loan Agreement or any related agreement, including the failure to return any borrowed Digital Assets to you or to make any required payments to you. We shall be responsible for determining whether any Loan shall be made, and for negotiating and establishing the terms of each such Loan within the parameters identified by you and the applicable Loan Agreement. We shall have the authority to terminate any Loan in our discretion, at any time and without prior notice to you. In the event of a default (within the meaning of the applicable Loan Agreement) by a Borrower on any Loan, we shall be entitled to exercise any rights and remedies on your behalf with respect thereto, and will be fully protected in acting in any manner it deems reasonable and appropriate. Upon notice to us, you have the right to direct us to initiate action to terminate any Loan made under this Authorization Agreement in accordance with the terms of the Loan Agreement. You acknowledge that we administer our Program for other customers of Gemini. We will allocate digital asset lending opportunities among our customers, using methods established by us from time to time. We do not represent or warrant that any amount or percentage of your Available Digital Assets will in fact be loaned to Borrowers. You acknowledge and agree that you shall have no claim against Gemini and we shall have no liability arising from, based on, or relating to, loans allocated to other customers, the terms of loans negotiated for other customers, or loan opportunities not made available to you, whether or not we have made fewer or more loans for any other customer, and whether or not any loan allocated to another customer, or loan opportunity not made available to you, could have resulted in Loans made under this Authorization Agreement. You further acknowledge and agree that, under the applicable Loan Agreements, Borrowers will not be required to return any Available Digital Assets delivered as a Loan ("Loaned Digital Assets") immediately upon receipt of notice from us terminating the applicable Loan, but instead will be required to return such Loaned

Digital Assets within such period of time following such notice as is specified in the applicable Loan Agreement, but not later than the customary settlement period.

## 6. Transfer of Information to Borrowers

In order to borrow your Available Digital Assets and pay Loan Fees to you, Borrowers, their affiliates or their respective service providers may require certain identifying information from you. You authorize us to share with Borrowers your Gemini account information and personally identifying information hereunder solely for the purposes of facilitating Loans and paying Loan Fees to you. This information may include, but is not limited to, your name, date of birth, and state and country of residence. Borrowers may store, access, transfer or use your personal information differently than we do. You should review each of your Borrowers' privacy policies to familiarize yourself with their terms. If you do not wish to share personally identifying information with Borrowers, you should not participate in our Program.

## 7. Distributions, Staking and Voting Rights with Respect to Loaned Digital Assets

Forks and Airdrops on Loaned Digital Assets and Available Digital Assets are subject to our User Agreement. In the event of a Fork or Airdrop, we may terminate or call back affected Loans on your behalf. If we, in our sole discretion, determine to support a Forked Network during the term of a Loan, and the distribution of new tokens can be definitively calculated according to the distribution method, you will receive the benefit and ownership of any incremental tokens generated as a result of the Fork or Airdrop (such tokens that meet the following conditions, the "New Tokens") if the following two conditions are met:

- *Market Capitalization*: the average market capitalization of the New Token (defined as the total value of all New Tokens) on the 30th day

following the occurrence the Fork or Airdrop (calculated as a 30-day average on such date) is at least 5% of the average market capitalization of the Loaned Digital Assets (defined as the total value of the Loaned Digital Assets) (calculated as a 30-day average on such date).

- *24-Hour Trading Volume*: the average 24-hour trading volume of the New Token on the 30th day following the occurrence the Fork or Airdrop (calculated as a 30-day average on such date) is at least 1% of the average 24-hour trading volume of the Loaned Digital Assets (calculated as a 30-day average on such date).

For the above calculations, the source for the relevant data on the Digital Asset market capitalization and 24-hour trading volume will be blockchain.info (or, if blockchain.info does not provide the required information, bitinfocharts.com, and if neither provides the required information, Gemini shall mutually agree upon another data source with the Borrower).

If the above criteria are met, New Tokens will be delivered to you according to the procedures set forth in the applicable Loan Agreement. We are not responsible for notifying you of any upcoming or planned Fork, Airdrop, or any other distributions on your Loaned Digital Assets. You acknowledge that the tax treatment of any payments of distributions from a Borrower to you in substitution of receiving such distribution directly may differ, and that you are solely responsible for calculating any resulting tax liabilities.

You acknowledge that you will not be entitled to participate in any staking functionality, delegation, voting, or other governance functions with respect to Digital Assets that are transferred into our Program or have been delivered to a Borrower in connection with a Loan.

# 8. Loan Fees

(a) Loan Fees. Fees or other income received from a Borrower in connection with Loans ("Loan Fees") shall be regularly credited to your Program account, on a recurring basis established by us, after deducting any applicable payments to Gemini as compensation for its services under this Authorization Agreement as

set forth below. Then-current Loan Fees will be provided through the Program
user interface for your review and approval before you authorize a new Loan.
Unless otherwise specified by the Loan Agreement, Loan Fees will be paid in-kind,
in the form of the Loaned Digital Asset. Any taxes required to be withheld at
source from Loan Fees may be deducted from the amount credited to your
Program account as described in this Paragraph (a), and to the extent that such
amount is less than the amount of such taxes, then you shall be responsible for
any shortfall.

(b) Notice of Rate Changes. Certain Loan Fees, including interest rates, may be
variable and subject to change during the term of a Loan according to the Loan
Agreement. As a result, your Loan Fees may increase or decrease from month to
month, leading to a higher or lower rate of return on your Loaned Digital Assets.
Borrowers participating in the Program will update their interest rates no more
than once every thirty (30) days. We will notify you through the Program website
and/or user interface of the available interest rates for each Available Digital Asset
in the applicable month.

(c) Right to Debit or Set Off. We may at any time charge or debit any of your
accounts maintained by or on behalf of Gemini in any capacity (or set off any
amounts otherwise payable or creditable to any such account) to pay any
amounts due to us under this Authorization Agreement. You acknowledge that
whenever we exercise our rights under this Paragraph (b) with respect to your
obligations to Gemini, we are acting in a principal capacity on our own behalf and
not on your behalf.

(d) Rewards and Promotions. We may from time to time offer rewards, referral fees
or promotional credits that are expressed in our Program user interface as higher
Loan Fees for an Available Digital Assets ("Rewards"). Unless otherwise noted,
Rewards are not offered to you by any Borrower and may be modified or
terminated in our sole discretion at any time. You are responsible for any tax
reporting obligation arising from Rewards credited to your Program account.

## 9. Agent Fees

The fees associated with our services under our Program are disclosed at
https://www.gemini.com/fees/gemini-earn-fees ("Agent Fees"), which we will
deduct from Loan Fees as described in Section 8. Agent Fees may be changed
from time to time by us upon notice to you by email or through the Program user
interface. By continuing to participate in our Program following such change, you
acknowledge and agree to such updated Agent Fees.

## 10. Additional Program Terms and Conditions

*General*. Your participation in our Program shall at all times be subject to our User
Agreement. While there is currently no minimum amount of Available Digital Assets
required to participate in our Program, we may, in our sole discretion, require a
minimum balance in the future.

*Calling Back Loans*. The terms of each Loan will be set forth in the Loan
Agreement with the Borrower, and your rights and obligations as a lender under
these agreements may vary. However, we will require that all Borrowers agree that
Loans will be callable at any time unless otherwise agreed with our customers. As
a result, you may request a return, in whole or in part, of your loaned Available
Digital Assets at any time.

Once you request a return of your Available Digital Assets through our Program
user interface, you will generally receive these Digital Assets within five (5)
business days. However, repayment terms are set forth in the Loan Agreement
and the terms of your Loan Agreement may provide for a longer repayment period.
While Available Digital Assets are in the process of being returned, they will not be
available for trading, transfers or withdrawals. Withdrawals from our Program to
external addresses are subject to additional verification by us. While withdrawals
from our Program to your Gemini Account are currently free and unlimited, we

reserve the right to limit the frequency of withdrawals and/or charge an administrative fee in the future.

*Borrower Capacity*. We do not guarantee that a Borrower will seek a Loan for your Available Digital Assets on terms you find acceptable, or at all. If at any time the Available Digital Assets in our Program exceed Loan demand from Borrowers, lending opportunities will be allocated according to methods established by us from time to time. We may, but are not required to, maintain a waitlist if Borrower capacity is oversubscribed. A waitlist is not a guarantee that your Available Digital Assets will be Loaned to a Borrower.

*Delisting; Regulatory Changes*. Unless otherwise agreed between you and the Borrower, Loans are generally open-term and will continue earning Loan Fees until called back by you. However, your Loan Agreement may specify certain events that allow the Borrower to repay and terminate a Loan immediately: such as a good faith belief that holding or borrowing an Available Digital Asset could violate applicable law. Similarly, we may terminate any outstanding Loans if we determine to delist a loaned Digital Asset from our Exchange. Review your Loan Agreement(s) for details on when and how Loans may be terminated.

# 11. Standard of Care and Indemnification

We shall use reasonable care in the performance of our duties hereunder consistent with that exercised by custodians generally in the performance of duties arising from acting as agent for clients in asset lending transactions. You agree to indemnify us and hold us harmless from any loss or liability (including the reasonable fees and disbursements of counsel) incurred by us in rendering services hereunder or in connection with any breach of the terms of this Authorization Agreement, except such loss or liability which results from our gross negligence or willful misconduct.

Notwithstanding any express provision to the contrary herein, we shall not be liable for any indirect, consequential, incidental, special, punitive or exemplary

damages, even if we have been apprised of the likelihood of such damages occurring.

You acknowledge that in the event that your participation in our Program generates income, we may be required to withhold tax or may claim such tax from you as is appropriate in accordance with applicable law.

# 12. Representations and Warranties

Each party hereto represents and warrants that (a) it has and will have the legal right, power and authority to execute and deliver this Authorization Agreement, to enter into the transactions contemplated hereby, and to perform its obligations hereunder; (b) it has taken all necessary action to authorize such execution, delivery, and performance; (c) this Authorization Agreement constitutes a legal, valid, and binding obligation enforceable against it; and (d) the execution, delivery, and performance by it of this Authorization Agreement will at all times comply with all applicable laws and regulations.

You represent and warrant that (a) you are in compliance with our User Agreement, (b) you have made your own determination as to (and you acknowledge that we are making no representation or warranty as to) the tax and accounting treatment of any Loan, including any Loan Fees or other remuneration or other funds received with respect thereto; (c) you are the legal and beneficial owner of (or exercise complete discretion over) all Available Digital Assets free and clear of all liens, claims, security interests and encumbrances; and (d) all transactions you authorize through our Program are carried out for your own account and not on behalf of any other person or entity.

# 13. Borrower Default

We act as your authorized agent under this Authorization Agreement with respect to facilitating your Loans to Borrowers. However, your Available Digital Assets leave our custody during the term of a Loan and the applicable callback period. The loan of Available Digital Assets to a Borrower cannot be reversed by us at our own discretion or our customer's direction. We do not insure, indemnify, or otherwise guarantee the return of your Digital Assets that have been loaned to a Borrower.

Your counterparty in each Loan transaction is a Borrower, and you alone bear the risk of loss of your loaned Digital Assets principal should a Borrower default. Your remedies in the event of a Borrower default will be determined by the applicable Loan Agreement. These remedies may be limited or, in some cases, unavailable in the event of a Borrower default. We shall be entitled to exercise any rights and remedies under the Loan Agreement on your behalf, and will be fully protected in acting in any manner we deem reasonable and appropriate. If the Borrower does not return the Loaned Digital Assets, it may not be possible to recover the assets from the Borrower, and we shall have no obligation to pursue such recovery on your behalf.

## 14. Continuing Agreement; Termination; Remedies

It is the intention of the parties hereto that this Authorization Agreement shall constitute a continuing agreement in every respect and shall apply to each and every Loan, whether now existing or hereafter made. We may terminate this Authorization Agreement immediately if (a) we, in our sole discretion, determine to suspend or terminate our Program; (b) we, in our sole discretion, determine that you have violated any portion of our User Agreement; or (c) upon the default of you or any Borrower under the terms of an applicable Loan Agreement. Following such termination, no further Loans shall be made hereunder on your behalf, and we shall, within a reasonable time after termination of this Authorization

Agreement, terminate any and all outstanding Loans. The provisions hereof shall continue in full force and effect in all other respects until all Loans have been terminated and all obligations satisfied as herein provided.

You may also end your participation in our Program at any time by requesting a return of all of your Available Digital Assets to your Gemini Account; provided, however, that this Authorization Agreement shall continue in full force and effect.

## 15. Agents and Subcontractors

We may use such agents, including sub-custodians, third party custodians and our affiliates, as we deem appropriate to carry out our duties under this Authorization Agreement. Our sole liability for the acts or omissions of any agent shall be limited to liability arising from our failure to use reasonable care in the selection of such agent.

## 16. Force Majeure

We shall not be responsible for any losses, costs, or damages suffered by you resulting directly or indirectly from war, riot, revolution, terrorism, pandemic, acts of government or other causes beyond our reasonable control or apprehension.

## 17. Miscellaneous

This Authorization Agreement supersedes any other agreement between you and Gemini or any representations made by you or Gemini to each other, whether oral or in writing, concerning Loans. This Authorization Agreement shall not be assigned by you without our prior written consent. Subject to the foregoing, this Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective heirs, representatives, successors, and permitted

assigns. This Authorization Agreement shall be governed and construed in accordance with the laws of The State of New York.

# 18. Dispute Resolution

You and Gemini agree and understand that any controversy, claim, or dispute arising out of or relating to this Authorization Agreement or your relationship with Gemini — past, present, or future — shall be settled solely and exclusively by binding arbitration held in the county in which you reside, or another mutually agreeable location, including remotely by way of video conference administered by National Arbitration and Mediation ("NAM") and conducted in English, rather than in court. You and Gemini expressly agree that any dispute about the scope of this Authorization Agreement to arbitrate and/or the arbitrability of any particular dispute shall be resolved in arbitration in accordance with this section. You and Gemini expressly agree that an arbitrator may issue all appropriate declaratory and injunctive relief necessary to ensure the arbitration of disputes (but only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim). You and Gemini agree to keep any arbitration strictly confidential.

You and Gemini agree that this arbitration provision applies not just to disputes between you and Gemini but also to (a) disputes with Gemini and any other party named or added as a co-defendant along with Gemini at any time, and (b) disputes in which a party is named as a defendant involving claim(s) arising from or related to this Authorization Agreement, even if Gemini is not named or added as a defendant. Any such co-defendant or defendant is a third-party beneficiary entitled to enforce this arbitration provision.

You and Gemini agree that the arbitrator shall have the authority to order any remedies, legal or equitable, which a party could obtain from a court of competent jurisdiction in an individual case based on the claims asserted, and nothing more.

The arbitrator shall not award punitive or exemplary damages to either party, unless such remedies would otherwise be available under applicable law. You and Gemini agree that this arbitration provision evidences a transaction involving interstate commerce and that the Federal Arbitration Act, 9 U.S.C. s. 1 et seq. ("FAA"), will govern its interpretation and enforcement and proceedings pursuant thereto. It is the intent of the parties to be bound by the provisions of the FAA for all purposes, including, but not limited to, interpretation, implementation, enforcement, and administration of this arbitration provision, and the FAA shall preempt all state laws to the fullest extent permitted by the law. You and Gemini agree that good-faith, informal efforts to resolve disputes often can result in a prompt, low-cost and mutually beneficial outcome. Therefore, a party who intends to seek arbitration must first send to the other a written Notice of Dispute ("Dispute Notice"). Any Dispute Notice to Gemini must be sent to support@gemini.com ("Notice Address"). Any Dispute Notice to you by Gemini will be sent to the email address registered with your Gemini Account. Any Dispute Notice must include (a) the name, address, and email address of the party providing the Dispute Notice; (b) a description of the nature and basis of the claim or dispute, including any relevant facts regarding Gemini or your use of Gemini; (c) an explanation of the specific relief sought, including the total damages sought, if any, and the basis for the damage calculations; (d) a signed statement from the party providing the Dispute Notice verifying the accuracy of the contents of the Dispute Notice; and (e) if the dispute is from you, and you have retained an attorney, a signed statement from you authorizing Gemini to disclose your account details to your attorney if necessary in resolving your claim or dispute. Any Dispute Notice from you must be individualized, meaning it can only concern your dispute and no other person's dispute. And any Dispute Notice from Gemini must be individualized, meaning it can only concern you and no other person. You also agree that, after sending a Demand Notice to Gemini, at Gemini's request you will personally participate in a discussion by telephone with Gemini to discuss whether an agreement can be reached to resolve the claim before arbitration is initiated. If

you are represented by counsel, you agree that you will personally attend the telephone conference with your counsel. Gemini also agrees to participate in such a telephone discussion at your request. Any informal dispute resolution conferences shall be individualized, such that a separate conference must be held each time either party intends to commence individual arbitration; multiple individuals initiating claims cannot participate in the same informal telephonic dispute resolution conference, unless mutually agreed to by the parties. You agree that compliance with these informal dispute resolution procedures is a condition precedent to commencing arbitration, and that the arbitrator shall dismiss any arbitration filed without fully and completely complying with these informal dispute resolution procedures.

If you and Gemini do not reach an agreement to resolve a claim within 60 days after a Demand Notice is received, you or Gemini may commence an arbitration proceeding; except that, if either you or Gemini send the other an incomplete Dispute Notice, the 60-day period begins only after a complete Dispute Notice is received, and if either you or Gemini request a telephone discussion, the 60-day period begins only after the discussion has occurred. The statute of limitations and any filing fee deadlines shall be tolled while the parties engage in these informal dispute resolution procedures.

Should any dispute proceed to arbitration, you and Gemini agree that any such arbitration shall be conducted in accordance with the prevailing NAM rules and procedures (including Comprehensive Dispute Resolution Rules and Procedures and/or the Supplemental Rules for Mass Arbitration Filings, as applicable) ("NAM Rules"), with the following exceptions to the NAM Rules if in conflict:

- The arbitration shall be conducted by one neutral arbitrator;
- Each side agrees to bear its own attorney's fees, costs, and expenses, unless such remedies would otherwise be available under applicable law, or unless the arbitrator finds that a claim, counterclaim, or defense is frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)); and

- All pleadings submitted in arbitration are subject to the standards set forth in Federal Rule of Civil Procedure 11, which, among other things, permits sanctions to be imposed where pleadings are submitted for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.
- The arbitrator may issue orders (including subpoenas to third parties, to the extent permitted by law) allowing the parties to conduct discovery sufficient to allow each party to prepare that party's claims and/or defenses, taking into consideration that arbitration is designed to be a speedy and efficient method for resolving disputes. For example, the arbitrator shall apply the Apex Doctrine and preclude depositions of either party's current or former high-level officers absent a showing that the officer has unique, personal knowledge of discoverable information and less burdensome discovery methods have been exhausted.

Additionally, if, at any time, 25 or more similar demands for arbitration are asserted against either party or their related parties by the same or coordinated counsel or entities ("Mass Filing"), the additional protocols set forth below shall apply:

- NAM's Mass Filing Rules shall apply if the parties' dispute is deemed by NAM, in its sole discretion pursuant to the NAM Rules and this Dispute Resolution section, to be part of a Mass Filing.
- Any Mass Filing shall be subject to a bellwether proceeding intended to reach a fair and speedy resolution of all claims included in the Mass Filing. In any Mass Filing, NAM shall select 15 demands for arbitration to proceed ("Bellwether Arbitrations"). While the Bellwether Arbitrations are adjudicated, no other demand for arbitration that is part of the Mass Filings may be filed, processed, or adjudicated, and no filing fees for such a demand for arbitration shall be due from either party to the administrator. Any applicable statute of limitations regarding such a demand for arbitration shall remain tolled beginning when the Mass Filing claimant first provided the other party with its Dispute Notice, as defined above.
- Following the resolution of the Bellwether Arbitrations, the parties shall engage in a global mediation of all remaining demands for arbitration comprising the Mass Filing. The mediation shall be administered by NAM. If the parties are unable to resolve the remaining demands for arbitration comprising the Mass Filing within 30 days following the mediation, the

remaining demands for arbitration comprising the Mass Filing shall be administered by NAM on an individual basis pursuant to the NAM Rules. You and Gemini agree to abide by all decisions and awards rendered in such proceedings and you and Gemini agree that such decisions and awards rendered by the arbitrator shall be final and conclusive, except for any appeal rights under the FAA.

To the extent you or Gemini seek emergency relief in connection with any controversy, claim, or dispute arising out of or relating to this Authorization Agreement or the breach thereof, or your relationship with Gemini, you and Gemini agree that this Authorization Agreement restricts you or Gemini from seeking emergency relief from any court, including without limitation temporary restraining orders and/or preliminary injunctions, and you and Gemini agree that, to the extent either party breaches this Authorization Agreement by seeking such relief from a court, that party shall be responsible for paying the opposing party's attorneys' fees in opposing such relief, and the arbitrator shall render an award of such attorneys' fees at the earliest possible time after such fees are incurred. Notwithstanding the foregoing obligation to settle disputes through arbitration, you or Gemini may assert claims, if they qualify, in small claims (or an equivalent) court in New York County or any United States county where you live. However, if the claims are transferred, removed or appealed to a different court, they shall be subject to arbitration.

You and Gemini agree that you or Gemini may, without inconsistency with this arbitration provision, apply to any court for an order enforcing the arbitral award. You and Gemini irrevocably and unconditionally agree to waive any objection that you or Gemini may now or hereafter have to the laying of venue of any action or proceeding relating to enforcement of the arbitral award in the federal or state courts located in the State of New York.

You and Gemini agree that all such controversies, claims, or disputes shall be settled in this manner in lieu of any action at law or equity. In arbitration the parties waive their rights to have a jury trial.

IF FOR ANY REASON THIS ARBITRATION CLAUSE BECOMES NOT APPLICABLE OR FOR ANY OTHER REASON LITIGATION PROCEEDS IN COURT THEN THE PARTIES AGREE THAT YOU AND GEMINI:

- TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAWS AND REGULATIONS, HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY AS TO ANY ISSUE RELATING HERETO IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AUTHORIZATION AGREEMENT OR THE SERVICES THAT GEMINI PROVIDES OR ANY OTHER MATTER INVOLVING US HERETO, AND
- SUBMIT TO THE EXCLUSIVE JURISDICTION AND VENUE OF THE FEDERAL OR STATE COURTS LOCATED IN NEW YORK COUNTY, NEW YORK AND YOU AGREE NOT TO INSTITUTE ANY SUCH ACTION OR PROCEEDING IN ANY OTHER COURT IN ANY OTHER JURISDICTION.

You and Gemini agree to arbitrate solely on an individual basis, and agree and understand that this Authorization Agreement does not permit class action or private attorney general litigation or arbitration of any claims brought as a plaintiff or class member in any class or representative arbitration proceeding or litigation ("Representative and Class Action Waiver"). The arbitral or other tribunal may not consolidate more than one person or entity's claims and may not otherwise preside over any form of a representative or class proceeding. Nothing in this paragraph shall be construed to prohibit settlements on a class-wide or representative basis.

If any portion of this arbitration clause is held to be invalid or unenforceable, the remaining portions will nevertheless remain in force. In any case in which (1) the dispute is filed as a class or representative action and (2) there is a final judicial determination that all or part of the Representative and Class Action Waiver is unenforceable, the class and/or representative action to that extent must be litigated in a civil court of competent jurisdiction, but the portion of the Representative and Class Action Waiver that is enforceable shall be enforced in arbitration. Additionally, if a court determines that a public injunctive relief claim may proceed notwithstanding the Representative and Class Action Waiver, and that determination is not reversed on appeal, then the public injunctive relief claim

will be decided by a court after any individual claims are arbitrated, and the parties will ask the court to stay the public injunctive relief claim until the other claims have been finally concluded in arbitration.

You agree that this section of this Authorization Agreement has been included to rapidly and inexpensively resolve any disputes with respect to the matters described herein, and that this section shall be grounds for stay or dismissal of any court action commenced by you with respect to a dispute arising out of such matters.

# 19. Modification

We reserve the right to update this Authorization Agreement from time to time, including the Schedules attached hereto, and will notify you of material updates via email or through our Program user interface. Your continued participation in our Program indicates your acceptance to the Authorization Agreement, as updated.

Notwithstanding the forgoing, you acknowledge and agree that we may increase the number of Digital Assets supported in the Program on Schedule B at any time and without notice to you.

# Schedule A

## Approved Borrowers

Genesis Global Capital, LLC

# Schedule B

## Digital Assets Supported by the Program

1Inch (1INCH)

Aave (AAVE)

Alchemix (ALCX)

Flexacoin (AMP)

Ankr (ANKR)

ApeCoin (APE)

Axie Infinity (AXS)

Balancer (BAL)

Basic Attention Token (BAT)

Bitcoin Cash (BCH)

Bancor (BNT)

Bitcoin (BTC)

Chiliz (CHZ)

Compound (COMP)

Curve (CRV)

Dai (DAI)

Dogecoin (DOGE)

Ether (ETH)

Fetch.ai (FET)

Filecoin (FIL)

Fantom (FTM)

The Graph (GRT)

Gemini dollar (GUSD)

Injective Protocol (INJ)

Kyber Network (KNC)

Chainlink (LINK)

Livepeer (LPT)

Loopring (LRC)

Litecoin (LTC)

Decentraland (MANA)

Polygon (MATIC)

Maker (MKR)

Orchid (OXT)

PaxGold (PAXG)

Ribbon Finance (RBN)

Ren (REN)

Rally (RLY)

Skale (SKL)

Synthetix (SNX)

Solana (SOL)

Storj (STORJ)

Sushiswap (SUSHI)

Tokemak (TOKE)

Uma (UMA)

Uniswap (UNI)

USD Coin (USDC)

Tezos (XTZ)

Yearn.finance (YFI)

Zcash (ZEC)

0x (ZRX)