

| | |
|---|---|
| 500 E Main Street, Suite 1400 | 299 Broadway, Suite 1816 |
| Norfolk, VA 23510 | New York, NY 10007 |
| Tel: (757) 904 5373 | Tel: (212) 548 3212 |

January 10, 2023

**BY ECF**

Hon. Naomi Reice Buchwald
U.S. District Court, S.D.N.Y.
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

    Re:    *Brendan Picha, et al. v. Gemini Trust Company, LLC, et al.*, No. 1:22-cv-10922
              Pre-Motion Letter on Proposed Motion to Compel Arbitration

Dear Judge Buchwald:

       We represent Defendants Gemini Trust Company, LLC ("Gemini") and its founders Cameron and Tyler Winklevoss. Pursuant to Rule 2.B. of Your Honor's Individual Practices, Gemini and the Winklevosses request a pre-motion conference to seek leave to move for an order (i) compelling arbitration of the claims brought by Plaintiffs Brendan Picha and Max Hastings, and (ii) staying the litigation pending the outcome of arbitration.

       Gemini offers an online platform for buying, selling, transferring, and storing cryptocurrencies. Plaintiffs are participants in the Gemini Earn program through which Plaintiffs chose to lend their digital assets to non-party Genesis Global Capital, LLC ("Genesis"). Due to events beyond Defendants' control, Genesis has wrongfully refused to return Plaintiffs' assets. But Plaintiffs chose to sue Gemini and the Winklevosses alleging that Gemini misrepresented or concealed the risks associated with participating in the Gemini Earn program and that the Winklevosses had the power and authority to direct Gemini's conduct. Compl. *passim*. Plaintiffs go after the wrong parties. As explained more fully in the contemporaneously filed Answer, the wrongdoers here are Genesis and its affiliated parties, including its corporate parent, the Digital Currency Group, Inc., and its founder, CEO, and controlling shareholder, Barry Silbert. Plaintiffs also overlook that, when they registered for the Gemini Earn program, they acknowledged and agreed that their assets were leaving Gemini's custody and Plaintiffs faced the risk of "TOTAL LOSS."

       But regardless of the merits of Plaintiffs' claims, this dispute does not belong in this Court. To become a Gemini user and a participant in the Gemini Earn program, Plaintiffs were required to enter into the Gemini User Agreement (the "User Agreement"), the Gemini Earn Program Terms and Authorization Agreement (the "Authorization Agreement"), and the Master Digital Asset

Loan Agreement (the "MDALA").[1]  When Plaintiffs did so, they agreed to arbitrate "any controversy, claim, or dispute arising out of or relating to" these agreements.  Ex. A at 107, Ex. B ¶ 18, Ex. C § X.  The Federal Arbitration Act requires Plaintiffs to honor this obligation.

### I.  Plaintiffs Agreed to Arbitrate

Gemini's contract formation process—which requires its users to check a box to accept the User Agreement, the Authorization Agreement, and the MDALA when creating an account and registering for the Gemini Earn program—readily satisfies New York law.  The full text of the User Agreement is hyperlinked so the user can read it prior to consenting to its terms.  Further, the users were required to review the entire Authorization Agreement and MDALA prior to registering for the Gemini Earn program.

"Courts routinely uphold" agreements "which require users to click an 'I agree' box after being presented with a list of terms and conditions of use." *Meyer v. Uber Techs., LLC*, 868 F.3d 66, 75 (2d Cir. 2017) (collecting cases); *see also Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 830-33 (S.D.N.Y. 2020) (enforcing an arbitration clause in the Terms of Use that were hyperlinked and required a user to click a button indicating consent).  "[C]licking the hyperlinked phrase is the twenty-first century equivalent of turning over the cruise ticket to read the fine print." *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) (referring to *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587-88 (1991), in which the Supreme Court enforced contract terms that directed consumer to review them elsewhere).

Gemini's electronic logs reflect the dates and times when Plaintiffs accepted each of the three Agreements, including their arbitration clauses.  Accordingly, Plaintiffs cannot reasonably dispute that they entered into a binding arbitration agreement with Gemini.

### II.  Plaintiffs Agreed to Delegate Questions of Arbitrability to the Arbitrator

To the extent Plaintiffs dispute their duty to arbitrate, such dispute must be resolved by the arbitrator because "a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).

Here, the User Agreement and the Authorization Agreement expressly provide "that any dispute about *the scope of this [User or Authorization] Agreement to arbitrate* and/or *the arbitrability of any particular dispute* shall be resolved in arbitration."  Ex. A at 107, Ex. B at ¶ 18 (emphases added).  This language constitutes clear and unmistakable evidence of delegation. *Henry Schein*, 139 S. Ct. at 530; *accord Bar-Ayal v. Time Warner Cable Inc.*, No. 03 Civ. 9905 (KMW), 2006 WL 2990032, at *7-8 (S.D.N.Y. Oct. 16, 2006).

Further, the User Agreement and Authorization Agreement call for the arbitration to be administered "in accordance with the prevailing [National Arbitration and Mediation] rules and procedures."  Ex. A at 107; Ex. B at ¶ 18.  Rule 17(B) of those NAM rules provides that "[t]he Arbitrator(s) shall have the authority to determine *jurisdiction and arbitrability* including, but not limited to … the *validity, existence, formation or scope of the agreement under which Arbitration*

---

[1] The Agreements are attached as **Exhibits A-C**.

*is being sought, and the proper parties to the Arbitration*."[2]  The MDALA calls for arbitration to be administered under the Commercial Arbitration Rules of the American Arbitration Association. Ex. C at § X.  These rules also delegate to the arbitrator "the power to rule on *his or her own jurisdiction*, including any *objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability* of any claim or counterclaim."[3]  Thus, the Court should enforce the delegation requirement.

### III.     Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreement

But if the Court were to reach the question about the scope of the arbitration agreement, the answer is simple: the applicable arbitration agreements expressly cover Plaintiffs' claims.

The User Agreement, the Authorization Agreement, and the MDALA require arbitration of "any controversy, claim, or dispute arising out of or relating to this [] Agreement or the breach thereof."  Ex. A at 107, Ex. B ¶ 18, Ex. C § X.  The Second Circuit has held that such language leaves "no doubt" that "any disputes with the Agreement's other signatory", *i.e.*, Gemini, must be arbitrated.  *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) ("The clause in this case, submitting to arbitration '[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause.").

Plaintiffs' claims against non-signatories Cameron and Tyler Winklevoss must also be arbitrated under the plain language of the User Agreement and the Authorization Agreement which require arbitration of disputes not only with Gemini but with "*any other party named or added as a co-defendant* along with Gemini" and such co-defendants are expressly designated "*a third-party beneficiary entitled to enforce this arbitration provision*."  Ex. A at 108; Ex. B at ¶ 18.  But even without such contractual language, the Second Circuit law is clear that a signatory "'is estopped from avoiding arbitration with a non-signatory 'when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'"  *Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co.*, 271 F.3d 403, 404 (2d Cir. 2001) (citations omitted).  Further, Cameron and Tyler Winklevoss are Gemini's founders, and "'[c]ourts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement.'"  *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 650 (S.D.N.Y. 2011) (Buchwald, J.) (quoting *Campaniello Imports, Ltd. v. Saporiti Italia, S.p.A.*, 117 F.3d 655, 668 (2d Cir.1997)).

In short, Plaintiffs' claims against Defendants are covered by the arbitration agreements. We thank the Court for its attention to this matter.

Sincerely,

/s/ John F. Baughman

cc:     Counsel of Record via ECF

---

[2]     *See* www.namadr.com/content/uploads/2022/04/ Comprehensive-Rules-as-of-4.18.2022.pdf (emphasis added).
[3]     *See* https://adr.org/sites/default/files/Commercial%20Rules.pdf (emphasis added).