UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRENDAN PICHA and MAX J. HASTINGS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GEMINI TRUST COMPANY, LLC, TYLER WINKLEVOSS and CAMERON WINKLEVOSS,

Defendants.

No.: 1:22-cv-10922-NRB

Hon. Naomi Reice Buchwald

**ORAL ARGUMENT REQUESTED**

**BRENDAN PICHA, MAX J. HASTINGS, KYLE MCKUHEN, JAMES DEREK TAYLOR, AND CHRISTINE CALDERWOOD'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF KIM & SERRITELLA LLP AS LEAD COUNSEL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 2

ARGUMENT ......................................................................................................................... 3

I. The Investor Group Should Be Appointed Lead Plaintiffs ........................................ 5

A. The Investor Group is a Cohesive and Committed Group of Sophisticated Individuals Who Can Best Serve the Needs and Wishes of the Class ............. 6

B. The Investor Group Satisfies the Statutory Elements for Appointment as Lead Plaintiffs as outlined in the PSLRA ........................................................ 9

1. The Investor Group Has Timely Filed a Motion to Be Appointed Lead Plaintiffs .......................................................................... 10

2. The Investor Group Has the Largest Financial Interest ........................... 10

3. The Investor Group Satisfies the Typicality and Adequacy Requirements of Rule 23 ........................................................................ 11

II. K&S Should be Approved as Lead Counsel ............................................................ 13

CONCLUSION ..................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Cases**

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
258 F.R.D. 260, 268 (S.D.N.Y. 2009) ..........

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992) ..........

*In re eSpeed, Inc. Sec. Litig.*,
232 F.R.D. 95, 100 (S.D.N.Y. 2005) .......... 10-11

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) .......... 11

*Kuebler v. Vectren Corp.*,
No. 3:18-cv-00113-RLY-MPB,
2018 U.S. Dist. LEXIS 153360 (S.D. Ind. Aug. 10, 2018) ..........

*Kux-Kardos v. VimpelCom, Ltd.*,
151 F. Supp. 3d 471 (S.D.N.Y. 2016).......... 13

*Lee v. Binance,*
No. 1:20-cv-02803, ECF No. 40 (S.D.N.Y. Aug. 26, 2020) .......... 5, 6, 7

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) .......... 5

*Peters v. Jinkosolar Holding Co.*,
No. 1:11-cv-07133
2012 U.S. Dist. LEXIS 38489 (S.D.N.Y. Mar. 19, 2012) .......... 6, 8

*Reitan v. China Mobile Games & Entm't Grp. Ltd.*,
68 F. Supp. 3d 390 (S.D.N.Y. 2014).......... 12

Risley *v. Universal Navigation Inc.*,
No. 1:22-cv-02780-KPF, ECF No. 40 (S.D.N.Y. July 29, 2022).......... 5, 6, 7, 14

*Salinger v. Sarepta Therapeutics, Inc.*,
No. 19-CV-8122 (VSB),
2019 U.S. Dist. LEXIS 218248 (S.D.N.Y. Dec. 17, 2019) .......... 9, 10, 11, 12

*See In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
288 F.R.D. 26 (S.D.N.Y. 2012) .......... 14

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015).......... 13

*Underwood v. Coinbase Global Inc.*,
No. 1:21-cv-08353-PAE, ECF No. 21 (S.D.N.Y. Jan. 11, 2022) ..................................... 5, 6, 8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008)........................................................................... 6

**Statutes**

15 U.S.C § 77b(a)(1)........................................................................................................ 4

15 U.S.C. § 77z-1(a) ........................................................................................................ 1

15 U.S.C. § 78u-4(a) ........................................................................................................

**Rules**

Fed. R. Civ. P. 23 ............................................................................................... passim

7 C.F.R. §240.10b-5(b) ............................................................................................... 5, 11

Pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i), Brendan Picha ("Picha"), Max J. Hastings ("Hastings"), Kyle McKuhen ("McKuhen"), James Derek Taylor ("Taylor"), and Christine Calderwood ("Calderwood") (collectively, the "Investor Group") respectfully submit this memorandum of law in support of their motion for appointment as lead plaintiffs and the approval of their selection of Kim & Serritella LLP ("K&S") as lead counsel (the "Motion").

**PRELIMINARY STATEMENT**

This case is a securities class action against Gemini Trust Company, LLC ("Gemini"), Tyler Winklevoss, and Cameron Winklevoss (collectively, the "Winklevosses;" Gemini and the Winklevosses collectively referred to herein as "Defendants"). Defendants created, own, and manage what they refer to as the "Gemini Earn" program, through which they offered and sold Gemini interest accounts ("GIAs") to investors. As alleged in the Complaint, Defendants violated securities laws through their unlawful promotion, offer, and sale of unregistered securities through the Gemini Earn program—in the form of GIAs purchased by the Investor Group and others—as well as their fraudulent misrepresentation and omissions as to the nature and risks of the GIAs.

The Investor Group is the most adequate plaintiff group to represent the Class. Their Complaint is the first class action that was filed concerning the underlying activity, and it is by far the most comprehensive. They timely filed the Motion, have substantial financial interests in the outcome of this litigation, and satisfy all Rule 23 requirements. In K&S they have qualified, experienced counsel which will provide the Class with exceptional representation against Defendants. And they have demonstrated that they can work together cohesively and effectively to achieve a result that is in the best interest of the Class.

For these and other reasons as discussed herein, the Investor Group respectfully requests that the Court appoint them as lead plaintiffs and approve their selection of K&S as lead counsel.

## FACTUAL BACKGROUND

Gemini is a crypto asset exchange and lending platform based in New York. *See* Complaint, Dkt. No. 1 ("Complaint" or "Compl.") ¶ 1. Since the company was first announced by its founders—the Winklevosses—in 2013, it quickly become one of the major crypto asset companies in the United States and expanded its operations into over 65 countries. *See id.* ¶¶ 16, 19. Various digital assets, stablecoins,[1] and tokens, nearly all of which are unregistered securities, are traded on the Gemini exchange. Defendants have described the Gemini platform as a crypto asset holding exchange on websites and social media accounts, and (falsely) promoted their platform as a safe and regulated exchange through, *inter alia*, advertising, blog posts, interviews, and social media. *See id.* ¶¶ 22, 25-31. Despite acting as an exchange for, and custodian of, securities, Gemini failed to register with the SEC. *See id.* ¶ 24.

On February 2, 2021, Gemini launched the Gemini Earn program, a lending platform designed to make it simple and easy for even casually involved crypto holders to earn interest on their assets by purchasing GIAs. *See id.* ¶ 33. Gemini Earn investors were to receive interest payments on their GIAs daily—with a fee paid to Gemini—but were supposed to be free to withdraw their investments immediately (later revised to within five business days) and at any time. *See id.* ¶¶ 36-37, 42. Gemini capitalized on their brand-based perception of regulation and safety to facilitate $3 billion in loans through GIAs. *See id.* ¶¶ 38-40.

[1] A "stablecoin" is a digital security purportedly locked at a 1-1 valuation ratio with the United States dollar. *See id.* ¶ 20. In practice, however, the stability of the coin is not as guaranteed as routinely advertised, and thus exposes purchasers to undisclosed risk. *See id*.

In order to participate in the Gemini Earn program, investors were required to enter into Master Loan Agreements ("MLAs")—with Gemini acting as "Custodian" of the crypto assets—facilitating the loan of said assets to Genesis, a third-party, as "Borrower." *Id.* ¶ 35. Gemini's website, however, was ambiguous as to the role of Genesis, and implied that Genesis was one partner among many, not the singular borrower of all GIA assets. *Id.* ¶¶ 41, 44. At no point did Gemini make explicit any risks—let alone the complete loss of investment—associated with participating in the Gemini Earn program. *See id.* ¶ 47.

In 2022, Terraform Labs and FTX both collapsed, causing substantial financial harm to Genesis and its parent company DCG. *See id.* ¶ 58. Thereafter, on November 16, 2022, Genesis halted new loans and redemptions, after which (and on the same day) Gemini blocked all withdrawals from the Gemini Earn platform, placing blame on the inability to retrieve funds from Genesis. *See id.* ¶¶ 79-80. To this day, participants in the Gemini Earn program—some of whom had invested hundreds of thousands or even millions of dollars—remain restricted from accessing their funds. *See id.* ¶ 89. Had the GIAs been registered as required under applicable law, and Gemini provided truthful statements at all times, Gemini Earn participants would have received necessary and meaningful disclosures that would have enabled them to more fully assess the representations issuers of the GIAs made and, in turn, the relative riskiness of their investments.

Among the participants who incurred substantial losses from Defendants' conduct are the members of the Investor Group. *See* Certification of Brendan Picha, dated February 25, 2023 ("Picha Cert."), App. A; Certification of Max J. Hastings, dated February 25, 2023 ("Hastings Cert."), App. B; Certification of Kyle McKuhen, dated February 27, 2023 ("McKuhen Cert."), App. C; Certification of James Derek Taylor, dated February 25, 2023 ("Taylor Cert."), App. D;

Certification of Christine Calderwood, dated February 25, 2023 ("Calderwood Cert."), App. E. A breakdown of each member's losses is in the chart below:

| **Investor** | **Losses**[2] |
|---|---|
| Brendan Picha | $92,142.60 |
| Max J. Hastings | $83,759.39 |
| Kyle McKuhen | $1,287,667.24 |
| James Derek Taylor | $1,008,363.52 |
| Christine Calderwood | $245,902.99 |

To the best of K&S's knowledge, as of the filing of this motion, there are no other individuals willing to serve as lead plaintiff with a larger financial interest than McKuhen individually or the Investor Group in total.

As a result of Defendants' misconduct and their resultant losses, plaintiffs Picha and Hastings[3] brought the present suit, alleging thirteen causes of action against Defendants arising under the Securities Act of 1933 (the "Securities Act"), the Securities and Exchange Act of 1934 (the "Exchange Act"), and common law. *See* Compl. ¶¶ 141-208. As alleged in the Complaint, Gemini violated Sections 5 and 29(b) of the Exchange Act by failing to register with the SEC as an exchange or broker-dealer, violated Sections 15(a)(1) and 29(b) of the Exchange Act by facilitating the sale of the GIAs, and violated Sections 5 and 12(a)(1) of the Securities Act by

[2] Inclusive of fees and calculated based on rescissory damages. In addition, these figures were calculated based on simplicity and are for the purposes of this Motion *only*. The ultimate amount of damages and the date at which damages are fixed remain issues of fact to be determined at a later date. The Investor Group reserves all rights in connection with seeking the full amount of damages to which they are entitled under the law.

[3] Plaintiffs Picha and Hastings brought this case on behalf of a proposed class of all persons who purchased GIAs through the Gemini Earn program (the "Class"). After Picha and Hastings filed this action, McKuhen, Taylor, and Calderwood sought to join the action as additional lead plaintiffs. Thus, this Motion is brought on behalf of all of the Investor Group, and should it be granted, the Investor Group will take whatever steps the Court deems necessary to have McKuhen, Taylor, and Calderwood formally join the case, including amending the Complaint.

selling, promoting, and/or soliciting the GIAs directly to Plaintiffs and members of the proposed Class. Gemini also violated Section 10(b) of the Exchange Act and Rule 10b-5(b) (17 C.F.R. §240.10b-5(b)) promulgated thereunder by making untrue statements of material fact, or omitting statements of material fact, in connection with the purchase or sale of a security, for which it is also liable for unjust enrichment, negligent-misrepresentation, and common-law fraud. The Winklevosses, by virtue of their roles as founders, owners, and executives of Gemini, maintained control Gemini and thereby the Gemini Earn program, and as such are liable as control persons under the Securities Act and Exchange Act, and are also liable for aiding and abetting Gemini's fraud.

## ARGUMENT

### I. The Investor Group Should Be Appointed Lead Plaintiffs

The PSLRA expressly permits a "group of persons" to be appointed lead plaintiff, and courts have recognized the value of groups of individuals serving as lead plaintiffs where, as here, there is a benefit to the litigation. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I); *see also, In re Oxford Health Plans, Inc. Sec. Litig*., 182 F.R.D. 42, 49 (S.D.N.Y. 1998). Courts in this District routinely approve coalitions of individuals of comparable size to the Investor Group to serve as lead plaintiffs in securities class actions involving crypto assets. *See*, *e.g.*, *Lee v. Binance*, No. 1:20-cv-02803-ALC, ECF No. 40 (S.D.N.Y. Aug. 26, 2020) (approving a group of eight lead plaintiffs, including seven individuals—six of whom joined the action after it was initially filed—in securities class action against crypto-asset exchange); *Underwood v. Coinbase Global Inc.*, No. 1:21-cv-08353-PAE, ECF No. 21 at *7-8 (approving a group of three individuals—one of whom joined after the action was initially filed—to serve as lead plaintiffs in securities class action against crypto-asset exchange); *Risley v. Universal Navigation Inc.*, No. 1:22-cv-02780-KPF, ECF No. 40 (S.D.N.Y. July 29, 2022) (approving a group of six individuals as lead plaintiffs—five of whom joined the

action after it was filed and K&S as co-lead counsel—in a securities class action against a so-called decentralized crypto-asset exchange). The Investor Group and the claims at issue in the case represent precisely the circumstances in which a group of lead plaintiffs provides the best avenue for protecting the rights and interests of the Class.

### A. The Investor Group is a Cohesive and Committed Group of Sophisticated Individuals Who Can Best Serve the Needs and Wishes of the Class

In evaluating the suitability of a lead plaintiff group, courts have employed a set of considerations specifically aimed at determining whether "unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). These factors include, "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Id.* (citations omitted). Similar factors were reiterated by a court in this District in a recent crypto asset securities class action case. *Underwood*, No. 1:21-cv-08353-PAE, ECF No. 21, at *7 (describing the factors a court is to consider when ascertaining whether a lead plaintiff group is appropriate as, "(1) the size of the group; (2) the relationship between the parties; and (3) any evidence that the group was formed in bad faith.") (quoting *Peters v. Jinkosolar Holding Co.*, 1:11-cv-07133, 2012 U.S. Dist. LEXIS 38489, at *7 (S.D.N.Y. Mar. 19, 2012)).

Under the factors as articulated in *Varghese* and *Underwood*, the facts before the Court support the appointment of the Investor Group as lead plaintiffs. The Investor Group is made up of five individuals, fewer than the lead plaintiff groups approved by the court in two other crypto asset securities class actions in this District, *Lee* and *Risley*, as noted above. *Lee*, No. 1:20-cv-02803-ALC, ECF No. 40; *Risley*, No. 1:22-cv-02780-KPF, ECF No. 40. Three members of the

Investor Group—Picha, Hastings and Calderwood—have a relationship that developed prior to the commencement of litigation via a chat group that Picha and Hastings administer on the instant messaging service Telegram (the "Telegram Group"). *See* Picha Cert. ¶¶ 8-9; Hastings Cert. ¶¶ 8-9; Calderwood Cert. ¶¶ 8-9. The additional members of the Investor Group are also members of the Telegram Group and other social media platforms, which they joined without the guidance or intervention of counsel. *See* McKuhen Cert. ¶ 9-10; Taylor Cert. ¶ 9. A group serving as lead plaintiffs is particularly suitable in this matter as it was the networking and community development facilitated by the Telegram Group that brought much of the Investor Group together, and which ultimately prompted Picha and Hastings to seek out K&S to act as their counsel on their behalf. *See* Picha Cert. ¶ 8-10; Hastings Cert. ¶ 8-10.

All members of the Investor Group have been substantially involved in the litigation. Picha and Hastings both participated in the initial filing of the Complaint, and the additional members of the Investor Group have engaged in extensive communication with K&S and signed detailed certifications attesting to their desire to participate in litigation moving forward. *See* Declaration of James Serritella, dated February 27, 2023 ("Serritella Decl.") ¶ 12; Declaration of Hee-Jean Kim ("Kim Decl."), dated February 27, 2023 ¶ 10; Picha Cert. ¶ 3; Hastings Cert. ¶ 3; McKuhen Cert. ¶ 3; Taylor Cert. ¶ 3; Calderwood Cert. ¶ 3.

The members of the Investor Group have also agreed to work in good faith toward consensus in decision making, as well as implementing a specific protocol for ensuring efficient and equitable participation and cooperation should consensus not be possible on a given issue. *See* Picha Cert. ¶ 12; Hastings Cert. ¶ 12; McKuhen Cert. ¶ 12; Taylor Cert. ¶ 11; Calderwood Cert. ¶ 12. Their pre-existing relationships, regular communications, and Picha's and Hasting's

cooperating in filing the Complaint "have demonstrated their ability to work cooperatively." *Underwood*, No. 1:21-cv-08353-PAE, ECF No. 21, at *7.

Members of the Investor Group have a high level of sophistication as regards novel crypto-based markets. Such sophistication is evinced by the participation and administration of the Telegram Group, as well as Picha's and Hastings' actions in deciding to seek legal remedies for Defendants' conduct and interviewing a number of law firms before selecting K&S as their desired counsel. *See* Picha Cert. ¶ 10; Hastings Cert. ¶ 10. Following the establishment of a relationship between K&S and Picha and Hastings, each additional member of the Investor Group contacted K&S on their own and without invitation from counsel. McKuhen Cert. ¶ 8; Taylor Cert. ¶ 8; Calderwood Cert. ¶ 10.

Finally, the Investor Group was not formed in bad faith, and as discussed below, as of the date of this filing, K&S is not aware of any competing potential lead plaintiffs with higher individual losses than the members of the Investor Group. This factor is important for determining lead plaintiff status under the PSLRA. *See Underwood*, No. 1:21-cv-08353-PAE, ECF No. 21, at *8; *see also Peters*, 2012 U.S. Dist. LEXIS 38489, at *25 ("[W]here the group comprises the class members with, far and away, the largest financial interest of any individual or group (that has otherwise come forward), then the policy [of the PSLRA] is not disserved by allowing those individuals to join together."). The Investor Group has specifically articulated their desire to represent the Class as a group, so as to prevent the weighty responsibility for adequately addressing the desires of a large and vocal collection of harmed individuals from being placed on one person. Picha Cert. ¶ 10; Hastings Cert. ¶ 10; McKuhen Cert. ¶ 11; Taylor Cert. ¶ 10; Calderwood Cert. ¶ 11. The Investor Group has established a precedent of democratic collaboration that they believe best serves both their needs and the needs of the Class, and representing the Class as a small and

cohesive group will allow this practice to continue. *See* Picha Cert. ¶ 12; Hastings Cert. ¶ 12; McKuhen Cert. ¶ 12; Taylor Cert. ¶ 11; Calderwood Cert. ¶ 12.

For the foregoing reasons, it is clear that the Investor Group is precisely the small organic coalition of proposed class members envisioned by the PSLRA and the courts as suitable for group lead plaintiff appointment.

### B. The Investor Group Satisfies the Statutory Elements for Appointment as Lead Plaintiffs as outlined in the PSLRA

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(i). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). "If a movant satisfies the three statutory factors—making a timely motion, demonstrating the largest financial interest, and otherwise satisfying Rule 23—then the court shall adopt a presumption that the movant is the most adequate plaintiff." *Salinger v. Sarepta Therapeutics, Inc.*, No. 19-CV-8122, 2019 U.S. Dist. LEXIS 218248, at *8 (S.D.N.Y. Dec. 17, 2019) (internal quotation marks omitted) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). "[O]ther members of the purported class may try to rebut the statutory presumption by showing

that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is incapable of adequately representing the class because of unique defenses." *Id*. (brackets in original) (quoting *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 258 F.R.D. 260, 268 (S.D.N.Y. 2009)).

The Investor Group meets these requirements and should therefore be appointed lead plaintiffs. Picha and Hastings filed the Complaint against Defendants on behalf of themselves and all others similarly situated, the Investor Group herein has timely moved to be appointed lead plaintiffs, the Investor Group has the largest financial interest (whether measured individually or collectively) of any known potential lead plaintiff, and the Investor Group satisfies the applicable Rule 23 factors.

**1. The Investor Group Has Timely Filed a Motion to Be Appointed Lead Plaintiffs**

Given that the Motion is timely filed, the Investor Group is entitled to be considered for appointment as lead plaintiffs. On December 27, 2022, Picha and Hastings filed the Complaint against Defendants—the first of its kind, sparking copycat suits elsewhere. Counsel published the requisite PSLRA notice through Business Wire on December 29, 2022, advising class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the proposed class period; and (4) the right to move the Court to be appointed as lead plaintiff by February 27, 2023. *See* Serritella Decl., Ex. 1. Thus, the Motion was timely filed on February 27, 2023.

**2. The Investor Group Has the Largest Financial Interest**

Although the PSLRA does not provide a method for calculating which plaintiff has the "largest financial interest," this District has "consider[ed] four factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered."

*Salinger*, 2019 U.S. Dist. LEXIS 218248, at *7 (citing *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005)). In making this determination, "[t]he magnitude of the loss is the most significant factor." *Id*. (citing *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007)).

As set forth *supra*, the members of the Investor Group individually and together represent the greatest known magnitude of losses from the conduct at issue. Thus, they have "the largest financial interest in the relief sought by the class" under the PSLRA.

**3. The Investor Group Satisfies the Typicality and Adequacy Requirements of Rule 23**

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). "In making the determination of whether a movant otherwise satisfies the requirements of Rule 23, the movant must make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *Salinger*, 2019 U.S. Dist. LEXIS 218248, at *7 (internal quotation marks omitted) (quoting *In re eSpeed*, 232 F.R.D. at 102). "This determination need not be as complete as would a similar determination for the purpose of class certification, and the movant is only required to make a *prima facie* showing that it meets the typicality and adequacy requirements." *Id*. (citations and internal quotation marks omitted).

**a) The Investor Group's Claims are Typical of the Class**

In analyzing typicality, "courts consider whether the claims of the proposed lead plaintiff arise from the same conduct from which the other class members' claims and injuries arise." *Salinger*, 2019 U.S. Dist. LEXIS 218248, at *7 (citations and internal quotation marks omitted). "While the claims need not be identical, they must be substantially similar to the other member' claims." *Id*. at *7-8 (citations omitted). This occurs when "each class member makes similar legal arguments to prove the defendant's liability." *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d

471, 477 (S.D.N.Y. 2016) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

The Investor Group easily satisfies the typicality requirement. Each member of the Investor Group purchased GIAs through the Gemini Earn program. Also, like every member of the Class, the Investor Group seeks to recover under the federal securities laws and common law for losses on investments in digital assets resulting from Defendants' unregistered sale of securities. Should relief be granted, these claims entitle the members of the Investor Group, along with every other member of the Class, to obtain the full measure of financial and equitable remedies outlined in the Complaint.

**b) The Investor Group Will Fairly and Adequately Protect the Interests of the Class**

In analyzing adequacy, "a court must consider whether the proposed lead plaintiff: (1) maintains claims that conflict with those of the class; (2) has sufficient interest in the outcome of the case; and (3) has selected counsel that is qualified, experienced, and generally able to conduct the litigation in question." *Salinger*, 2019 U.S. Dist. LEXIS 218248, at *8 (citing *Reitan v. China Mobile Games & Entm't Grp. Ltd.*, 68 F. Supp. 3d 390, 400 (S.D.N.Y. 2014)).

The Investor Group satisfies these requirements. First, there is no conflict between the Investor Group and the Class. Both the Investor Group and the Class invested with the Gemini Earn program—creating a shared interest in similar legal remedies for their similar transactions. This alignment of interests will hold at each stage of the litigation.

Second, as discussed *supra*, the Investor Group has sufficient interest in the outcome of the case. Each realized significant losses during the Class Period because of Defendants' brokering, dealing, offering, and selling unregistered securities through the Gemini Earn program, while omitting and obfuscating the nature of the MLA and the potential risks that investment in GIAs

involved. Given their significant individual losses, each member of the Investor Group is motivated to maximize the Class's recovery and will work closely together to achieve that end.

Finally, as addressed in greater detail *infra*, in K&S, the Investor Group has selected counsel that is qualified, experienced, and generally able to conduct the litigation in question. The ability of the Investor Group to adequately represent the Class is further evinced by their selection of counsel that has already marshaled significant factual support for the underlying claims against Defendants. *See*, *e.g.*, *Kuebler v. Vectren Corp.*, No. 3:18-cv-00113-RLY-MPB, 2018 U.S. Dist. LEXIS 153360, at *10 (S.D. Ind. Aug. 10, 2018) (proposed lead plaintiff group "vigorously prosecuted the interests of the class: it was the first to file a complaint, publish the necessary notice, and move for a preliminary injunction," which was "enough to show that the [plaintiff group] has satisfied the threshold requirements of Rule 23."). Here, as in *Kuebler*, members of the Investor Group were the first to investigate the claims at issue, file a complaint, and publish the necessary notice, which weighs in favor of their appointment as lead plaintiffs. Accordingly, the Investor Group satisfies the adequacy requirement.

## II. K&S Should be Approved as Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). "There is a strong presumption in favor of approving a properly-selected lead plaintiffs decision as to counsel." *Kux-Kardos*, 151 F. Supp. at 479 (quoting *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015)).

K&S is qualified, experienced, and more than capable of effectively prosecuting this class action on behalf of Picha, Hastings, McKuhen, Taylor, Calderwood and the Class. *See* Serritella Decl., Ex. 2. James Serritella ("Serritella"), a co-founder of Kim & Serritella LLP, and the lead

attorney on this case, has over 15 years of complex commercial litigation and class action experience with a high degree of successful results, as well as substantial courtroom and trial experience. *See id.*, Ex. 2 at *9. Serritella and K&S have a deep understanding of crypto-assets and regularly represent investors in novel disputes concerning such assets. *See id.* ¶¶ 4, 6. Indeed, K&S is currently co-lead counsel (with Serritella as lead trial counsel) in another securities class action brought against a crypto-asset exchange before the courts of this District. *See Risley*, No. 1:22-cv-02780-KPF, ECF No. 40; *Id.* ¶ 6. And K&S also regularly prosecutes claims on behalf of investors in traditional securities, and years of experience in securities law. *See id.*, Ex. 2 at* 4, 10, 13, 19.

Prior to launching K&S, Serritella was a partner at two large and prestigious law firms for several years and oversaw all aspects of multiple novel and high stakes litigations concerning securities and investments. *See id.*, Ex. 2 at *4, 9-10. His experience includes defending large investment banks against billions of dollars in claims in (i) fraud and put-back actions alleging misrepresentations in offering materials and breaches of representations and warranties in connection with the sale of residential mortgage-backed securities and (ii) actions commenced by the trustee liquidating Bernard L. Madoff Investment Securities LLC and the liquidators of a foreign fund that invested in Madoff. *See id.*, Ex. 2 at *10. Complementing Serritella at K&S are seasoned attorneys who also have substantial complex litigation and class-action experience, including in connection with securities, antitrust, and wage and hour claims. *See id.*, Ex. 2 at *9-22.

Prior to filing the Complaint, K&S devoted substantial time and resources working on identifying and investigating the claims set forth in the Complaint, which is also an important factor in determining lead counsel. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 288

F.R.D. 26, 44 (S.D.N.Y. 2012) (crediting the importance of counsel's pre-suit work in appointing lead counsel). Even after the filing of this action, K&S has continued to expend significant resources in further work related to the prosecution of this action, including, without limitation, responding to Defendants' pre-motion letter seeking to move to compel arbitration, and closely following and conducting extensive research into the Genesis bankruptcy proceedings which appear to be encroaching on the territory of this action. No other lawyers are better suited to represent the Class or have studied and prepared these claims as extensively.

Accordingly, the Investor Group respectfully submit that K&S is qualified to serve as lead counsel in this litigation and together will provide the Class with exceptional legal representation.

## CONCLUSION

For the reasons stated herein, the Investor Group respectfully request that this Court (i) appoint Picha, Hastings, McKuhen, Taylor, and Calderwood as lead plaintiffs; (ii) approve Picha, Hastings, McKuhen, Taylor, and Calderwood's choice of K&S as lead counsel for the Class; and (iii) issue any other relief that the Court deems just and proper.

Dated:   New York, New York
         February 27, 2023

                Respectfully submitted,

                KIM & SERRITELLA LLP

             By:   /s/ James R. Serritella
                James R. Serritella
                Justin Stone (*pro hac vice*)
                C. Claudio Simpkins
                110 W. 40th Street, 10th Floor
                New York, NY 10018
                212-960-8345
                jserritella@kandslaw.com
                jstone@kandslaw.com
                csimpkins@kandslaw.com