UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRENDAN PICHA, MAX J. HASTINGS, KYLE MCKUHEN, JAMES DEREK TAYLOR, and CHRISTINE CALDERWOOD, Individually and On Behalf of All Others Similarly Situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>GEMINI TRUST COMPANY, LLC, TYLER WINKLEVOSS, and CAMERON WINKLEVOSS,<br><br>*Defendants.* | No. 1:22-cv-10922-NRB<br><br>Hon. Naomi Reice Buchwald |

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANTS' MOTION TO COMPEL ARBITRATION</u>

TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

FACTS ................................................................................................................................. 2

A.    Overview .................................................................................................................. 2

STANDARD OF REVIEW ................................................................................................ 4

ARGUMENT ...................................................................................................................... 4

I.     The FAA Requires Enforcement of the Parties'
Agreement to Arbitrate. ........................................................................................... 5

II.    Plaintiffs Consented to Arbitration in the User Agreement. .................................. 5

III.   The Parties Have Delegated Issues of Scope and Arbitrability
to the Arbitrator. ..................................................................................................... 10

IV.   Plaintiffs' Claims Against Defendants Fall Within the Scope
of the Arbitration Agreement. ............................................................................... 12

V.    Plaintiffs Have Not Demonstrated Any Conflict as to the Agreement to Arbitrate. .......... 14

VI.   This Action Should Be Stayed Pending Arbitration of Plaintiffs' Claims. ....................... 15

CONCLUSION ................................................................................................................. 15

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alghanim v. Alghanim*,
828 F. Supp. 2d 636 (S.D.N.Y. 2011)........................................................................13

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)........................................................................................4, 5

*Bar-Ayal v. Time Warner Cable Inc.*,
2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006) ........................................................ 11-12

*Camilo v. Lyft, Inc.*,
384 F. Supp. 3d 435 (S.D.N.Y. 2019)........................................................................5

*Cent. W. Va. Energy, Inc. v. Bayer Cropscience LP*,
645 F.3d 267 (4th Cir. 2011) ........................................................................ 14-15

*Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co.*,
271 F.3d 403 (2d Cir. 2001)........................................................................13

*Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995) ........................................................................12

*Contec Corp. v. Remote Solution, Co.*,
398 F.3d 205 (2d Cir. 2005)........................................................................11, 12

*Feld v. Postmates, Inc.*,
442 F. Supp. 3d 825 (S.D.N.Y. 2020)........................................................ 7-8, 9

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012)........................................................................9

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995)........................................................................5

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)........................................................................15

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019) ........................................................................ 10-11

*Hidalgo v. Amateur Athletic Union of U.S., Inc.*,
468 F. Supp. 3d 646 (S.D.N.Y. 2020)........................................................7, 9, 11

*Hines v. Overstock.com, Inc.*,
380 F. App'x 22 (2d Cir. 2010) ...................................................................6

*Hudson Specialty Ins. Co. v. N.J. Transit Corp.*,
2015 WL 3542548 (S.D.N.Y. June 5, 2015) ................................................4

*Kindred Nursing Ctrs. LP v. Clark*,
581 U.S. 246 (2017).....................................................................................5

*Maffea v. Ippolito*,
247 A.D.2d 366 (2d Dep't 1998) .................................................................6

*Matter of Estate of Cassone*,
63 N.Y.2d 756 (1984) .................................................................................15

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)..............................................................4, 7, 8-9

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*,
473 U.S. 614 (1985)...................................................................................14

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp.*,
88 F.3d 129 (2d Cir. 1996)...........................................................................4

*Parisi v. Goldman, Sachs & Co.*,
710 F.3d 483 (2d Cir. 2013)..........................................................................4

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*,
991 F.2d 42 (2d Cir. 1993)........................................................................5-6

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010).....................................................................................11

*Revis v. Schwartz*,
192 A.D.3d 127 (2d Dep't 2020), *aff'd*, 38 N.Y.3d 939 (2022)................11

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,
490 U.S. 477 (1989)...................................................................................14

*Starke v. SquareTrade, Inc.*,
913 F.3d 279 (2d Cir. 2019)..........................................................................8

*Sultan v. Coinbase, Inc.*,
354 F. Supp. 3d 156 (E.D.N.Y. 2019) ..........................................................7

*Town of Amherst v. Granite State Ins. Co., Inc.*,
29 N.Y.3d 1016 (2017) ...............................................................................15

*UBS Fin. Services, Inc. v. W. Va. Univ. Hosps., Inc.*,
660 F.3d 643 (2d Cir. 2011).............................................................................14

*United States v. Konn*,
634 F. App'x 818 (2d Cir. 2015) ......................................................................5

*Wu v. Uber Techs., Inc.*,
2022 WL 17826816 (Sup. Ct. Bronx Cnty. Dec. 20, 2022) .......................7, 9

*Zambrana v. Pressler & Pressler, LLP*,
2016 WL 7046820 (S.D.N.Y. Dec. 2, 2016) ...............................................13

## Statues & Rules

9 U.S.C. § 2.........................................................................................................5

9 U.S.C. § 3.......................................................................................................15

Defendants Gemini Trust Company, LLC ("Gemini"), Tyler Winklevoss, and Cameron Winklevoss (collectively, "Defendants") submit this memorandum of law in support of their motion to compel arbitration and stay the claims brought by Plaintiffs Brendan Picha, Max J. Hasting, Kyle McKuhen, James Derek Taylor, and Christine Calderwood, ("Plaintiffs") pending the outcome of arbitration.

## INTRODUCTION

Gemini offers an online platform for buying, selling, transferring, and storing cryptocurrencies.  Plaintiffs are users of Gemini's platform.  Plaintiffs are also participants in the Earn Program—a voluntary program available to Gemini users—through which Plaintiffs chose to lend digital assets held on Gemini's platform to non-party Genesis Global Capital, LLC ("Genesis") in exchange for earning interest on the loaned assets.  Due to events beyond Defendants' control, Genesis—which recently filed for bankruptcy—has refused to return the assets loaned by Plaintiffs, resulting in Plaintiffs filing this suit against Defendants.

Defendants have strong defenses to Plaintiffs' claims.  But this motion does not involve the merits of Plaintiffs' claims or lack thereof.  Rather, it presents a threshold procedural issue: Plaintiffs cannot bring their claims in this Court because they agreed to arbitrate them.  To become a Gemini account user, and every time Plaintiffs logged in to Gemini's website to access their accounts, Plaintiffs were required to indicate their acceptance of the Gemini User Agreement (the "User Agreement").  In that User Agreement, Plaintiffs agreed to arbitrate "*any controversy, claim, or dispute arising out of or relating to this User Agreement or [Plaintiffs'] relationship with Gemini . . . .*"  The law requires Plaintiffs to honor their contractual obligations.  The Court should compel arbitration of Plaintiffs' claims against Gemini.  In addition, the claims brought against the Winklevosses should also be compelled to arbitration under the plain language of the User

Agreement which mandates arbitration of claims against Gemini's co-Defendants and pursuant to well-established law that requires arbitration of intertwined claims and claims against agents of a signatory to the arbitration agreement.

FACTS

**A.      Overview**

Gemini offers an online platform for buying, selling, transferring, and storing cryptocurrencies.  Decl. ¶ 3.[1]  Tyler and Cameron Winklevoss are the founders of Gemini.  Am. Compl. ¶ 19.  Beginning in February 1, 2021, Gemini offered a lending program in which registered Gemini users could elect to participate (the "Earn Program").  Decl. ¶ 4.  Through the Earn Program, participants such as Plaintiffs were able to make an independent, purely voluntary decision to lend digital assets (*i.e.*, cryptocurrency) to Genesis in exchange for payment of interest. *Id.* ¶ 4; *see also* Am. Compl. ¶ 19.

To participate in the Earn Program or any other program offered through Gemini's platform, Plaintiffs had to first register and create an account on Gemini's website.  Decl. ¶ 5. Each of the Plaintiffs registered as Gemini users and created accounts with Gemini on the following dates: (i) Brendan Picha: December 5, 2017; (ii) Max J. Hastings: September 8, 2017; (iii) Kyle McKuhen: May 16, 2016; (iv) James Derek Taylor: February 20, 2021; and (v) Christine Calderwood: May 30, 2021.  *Id.* ¶ 6.

To register and create accounts with Gemini, Plaintiffs had to use Gemini's account registration webpage.  *Id.* ¶ 7.  On this webpage, Plaintiffs were prompted and required to enter their full name, email address, and password.  *Id.*  Before they could proceed any further with the

---

[1]     Declaration of Travis Freeman.  Cites to Exhibits 1 through 5 refer to the exhibits attached to the Declaration.

registration process, Plaintiffs had to affirmatively check a separate box next to the language stating: "By creating this account, you agree to our User Agreement and Privacy Policy." *Id*. The phrase "User Agreement" was hyperlinked to the full text of the User Agreement in place at the time. *Id*. It was impossible for an individual to create a new Gemini account or complete the registration process without checking the box expressly indicating consent to the User Agreement. *Id*. ¶ 9.

The User Agreement terms are updated from time to time and were updated on December 14, 2022. *Id*. ¶¶ 10–11; Ex. 3. On December 15, 2022, Gemini sent an email to all registered users explaining that the User Agreement changed and encouraging Gemini users to review the amended User Agreement. Ex. 4. The phrase "User Agreement" hyperlinked to the full text of the amended User Agreement on Gemini's website so the individual could review it without logging into his or her account. *Id*. If the user chose to log in to his Gemini account after December 14, 2022, the "Sign In" page instructed as follows: "Our User Agreement has changed, including the Dispute Resolution provision. By clicking 'Sign In' below, I agree to Gemini's <u>USER AGREEMENT</u> and <u>PRIVACY POLICY</u>." *Id*. ¶ 13; Ex. 5.

Each of the Plaintiffs logged in to their Gemini accounts and thus accepted the amended User Agreement on the following dates: (i) Brendan Picha: December 25, 2022; (ii) Max J. Hastings: December 23, 2022; (iii) Kyle McKuhen: December 20, 2022; (iv) James Taylor: December 16, 2022; (v) Christine Calderwood: December 16, 2022. *Id*. ¶ 14. The User Agreement has at all times included and continues to include an agreement to arbitrate "*any controversy, claim, or dispute arising out of or relating to this User Agreement or [the user's] relationship with Gemini . . . .*" Ex. 3 at 107 (emphasis added); Decl. ¶ 10. It further provides that the "arbitration provision applies not just to disputes between [Plaintiffs] and Gemini but also to . . . disputes with

Gemini and any other party named or added as a co-defendant along with Gemini . . . .  Any such co-defendant or defendant is a third-party beneficiary entitled to enforce this arbitration provision." *Id.* at 108.

STANDARD OF REVIEW

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"), embodies a "liberal federal policy in favor of arbitration." *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 488 (2d Cir. 2013).  This "liberal federal policy favoring arbitration agreements" applies "notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  Consistent with this policy, there is a presumption of arbitrability, meaning that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996) (citation omitted).  Thus, "[t]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Hudson Specialty Ins. Co. v. N.J. Transit Corp.*, 2015 WL 3542548, at *2 (S.D.N.Y. June 5, 2015) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)).  In determining whether to compel arbitration, district courts apply a standard similar to the one applied in a motion for summary judgment.  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017).

ARGUMENT

Plaintiffs agreed to arbitrate "any" claim arising out of their relationship with Gemini.  The Court should hold Plaintiffs to their agreements and compel arbitration, as it is authorized to do by the FAA.

I.      **The FAA Requires Enforcement of the Parties' Agreement to Arbitrate.**

The FAA governs any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce."  9 U.S.C. § 2.  Here, both criteria are met: (i) the arbitration agreements are in writing, and (ii) contracts related to the use of an online crypto-trading platform plainly involve interstate commerce, because "there can be no question that the Internet is a channel and instrumentality of interstate commerce."  *United States v. Konn*, 634 F. App'x 818, 821 (2d Cir. 2015); *Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 439 (S.D.N.Y. 2019) (FAA applies to Lyft's online Terms of Use Agreement that contains an arbitration clause).

Under the FAA, Plaintiffs' arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  As the Supreme Court has explained, "[t]he overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."  *AT&T Mobility LLC*, 563 U.S. at 344.  As stated, this "liberal federal policy favoring arbitration agreements" applies "notwithstanding any state substantive or procedural policies to the contrary."  *Id.* at 346 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24).  Here, no grounds exist in law or in equity for the revocation of the arbitration agreement.

II.     **Plaintiffs Consented to Arbitration in the User Agreement.**

To determine whether a valid arbitration agreement has been formed, courts must "apply ordinary state-law principles that govern the formation of contracts."  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  But only "generally applicable" contract rules apply; state-law rules that "discriminat[e]" against or "disfavor[]" arbitration agreements are preempted by the FAA.  *Kindred Nursing Ctrs. LP v. Clark*, 581 U.S. 246, 251 (2017); *see e.g.*, *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993) (finding that a New York rule which required a movant to demonstrate the existence of an "express,

unequivocal agreement" to arbitrate, was preempted by the FAA because it improperly increased the burden on the movant).

Plaintiffs chose to file this lawsuit in a New York forum.  *See* Am. Compl. ¶ 17.  The Defendants are located in New York.  *Id.*  ¶¶ 13–15.  The User Agreement contains a New York choice of law clause.  Ex. 3 at 107.  Therefore, except to the extent it is preempted by the FAA, New York law applies to determine whether an agreement to arbitrate exists between Plaintiffs and Defendants.  Other issues related to arbitration, if any, should be governed by the FAA.  Both laws require arbitration in this case.

As detailed above, Plaintiffs agreed to the User Agreement when they first became Gemini users and then agreed again when they consented to the terms of the amended User Agreement after December 14, 2022.  Decl. ¶ 6, 14; Ex. 3.  These agreements were formed online, but this does not affect their validity.  The rules of contract formation are no different when an individual engages in a transaction on an electronic device or through the Internet.  *Register.com, Inc. v. Verio, Inc*., 356 F.3d 393, 403 (2d Cir. 2004) (explaining that the Internet "has not fundamentally changed the principles of contract").  Just as with any type of contract, the central issue is still whether mutual assent existed between the contracting parties.  *See id.*; *see also Maffea v. Ippolito*, 247 A.D.2d 366, 367 (2d Dep't 1998) ("The manifestation or expression of assent necessary to form a contract may be by word, act, or conduct which evinces the intention of the parties to contract.").

"[I]n the context of agreements made over the internet, New York courts find that binding contracts are made when the user takes some action demonstrating that they have at least constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance."  *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 25 (2d Cir. 2010).  New York courts

thus consistently recognize the validity of various types of online agreements including (i) *clickwrap agreements*, which "require a user to affirmatively click a box on the website acknowledging awareness of and agreement to the terms of service before he or she is allowed to proceed with further utilization of the website," and (ii) *sign-in-wrap agreements*, in which "the website is designed so that a user is notified of the existence and applicability of the site's 'terms of use' when proceeding through the website's sign-in or login process." *Wu v. Uber Techs., Inc.*, 2022 WL 17826816, at \*21 (Sup. Ct. Bronx Cnty. Dec. 20, 2022) (describing the various types of agreements); *see also Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 829 (S.D.N.Y. 2020) (same) (citation omitted).

Although an agreement's category is not necessarily dispositive, these two types of contracts are consistently upheld so long as the user is provided with objectively reasonable notice of the contract terms. *Meyer*, 868 F.3d at 71 (2d Cir. 2017) (collecting cases and noting that "[c]ourts routinely uphold" agreements "which require users to click an 'I agree' box after being presented with a list of terms and conditions of use"); *Wu*, 2022 WL 17826816, at \*1, \*21, \*29 (compelling arbitration based on amended terms of use for Uber's ride-sharing smartphone application); *Sultan v. Coinbase, Inc.*, 354 F. Supp. 3d 156, 159, 162 (E.D.N.Y. 2019) (enforcing an arbitration clause in a cryptocurrency exchange's website user agreement).

Actual notice of the contract terms is not necessary for mutual assent and is therefore irrelevant. *Sultan*, 354 F. Supp. 3d at 161. "Where there is no evidence that the offeree had actual notice of the terms of the agreement, the offeree will still be bound by the agreement if a reasonably prudent user would be on inquiry notice of the terms." *Meyer*, 868 F.3d at 74–75; *accord Hidalgo v. Amateur Athletic Union of U.S., Inc.*, 468 F. Supp. 3d 646, 654 (S.D.N.Y. 2020) (same).

Whether inquiry notice exists is examined from the perspective of "a reasonably prudent

smartphone or Internet user, and does not 'presume that the user has never before encountered an app or entered into a contract using a smartphone.'" *Feld*, 442 F. Supp. 3d at 830 (quoting *Meyer*, 868 F.3d at 77). "That the contents of the [the agreement] do not appear on the screen or that [the movant] does not require a 'user to actually examine the terms before assenting' does not change the analysis." *Id.* at 831 (quoting *Fteja v. Facebook, Inc*., 841 F. Supp. 2d 829, 837–38 (S.D.N.Y. 2012)). Rather, to evaluate whether notice exists, courts are directed to "look to the design and content of the relevant interface to determine if the contract terms were presented to the offeree in way that would put her on inquiry notice of such terms." *Starke v. SquareTrade, Inc*., 913 F.3d 279, 289 (2d Cir. 2019). During this review, a court is to consider features such as (i) whether the interface is visually cluttered, (ii) whether the hyperlink to the contract terms is "spatially coupled" with a box or button used to indicate assent, (iii) whether the entire screen is visible at once, instead of requiring the user to scroll to the bottom of the screen to access a hyperlink to the contract terms, and (iv) whether the language used is a clear prompt signaling to the user that they are accepting contract terms. *Id.* at 292 (setting forth factors).

For example, in *Meyer*, the plaintiff, a user of Uber's rideshare smartphone application, saw a screen during the account registration process, which said "[b]y creating an Uber Account you agree to the Terms of Service and Privacy Policy" with a hyperlink to the terms of service at the bottom of the page. 868 F.3d at 71 (emphasis omitted). The words "Terms of Service & Privacy Policy" were underlined, capitalized, and in a different color font to denote that it was a hyperlink. *Id.* Clicking on the hyperlinked text took the user to another webpage containing a button that, when clicked, would display a third webpage with the contract terms, including an arbitration clause. *Id.* After entering payment information, the user had to click the "Register" button in the middle of the screen to complete the registration process and be able to use Uber's

ridesharing application.  *Id.*  Uber's records, confirmed by affidavit, indicated that the plaintiff had registered for an account using this process and used Uber's application and services thereafter. *Id.* at 70.  On appeal, considering the interface design, the Second Circuit found that this user interface "provided reasonably conspicuous notice" of the contract sufficient to create a binding contract between Uber and the plaintiff, including an agreement to arbitrate.  *Id.* at 79 (concluding "as a matter of law, that Meyer agreed to arbitrate his claims with Uber").

*Meyer* is not an outlier.  Many other New York courts have routinely enforced agreements formed online in cases with user login or registration pages analogous to those at issue in this case. *See, e.g.*, *Feld*, 442 F. Supp. 3d at 827 (enforcing an arbitration clause in website's terms of use that were hyperlinked and required a user to click a button indicating consent); *Hidalgo*, 468 F. Supp. 3d at 656–59 (same); *Fteja*, 841 F. Supp. 2d at 838–41 (same, except that the court enforced a forum selection clause in the website's terms of service); *Wu*, 2022 WL 17826816, at *22 (enforcing an arbitration agreement within online Terms of Use which were hyperlinked and plaintiff clicked "Confirm" button).

Indeed, at least two courts have already compelled arbitration based on Gemini's User Agreement and account registration process.  *See Griffin v. Gemini Trust Company,* No. 22-cv-1747-CRB (N.D. Cal. Jul. 29, 2022) (granting Gemini's motion to compel arbitration and rejecting all contract formation challenges), attached as **Exhibit A**; *Ciceron v. Gemini Trust Company, LLC*, Index No. 652075/2021 (Sup. Ct. N.Y. Cnty. Dec. 3, 2021) (granting Gemini's motion to compel arbitration), attached as **Exhibit B**.  Two other plaintiffs recently chose not to oppose Gemini's motions to compel arbitration after they were filed.  Proposed Order Staying Proceedings, *IRA Financial Trust v. Gemini Trust Company, LLC*, No. 22-cv-04672 (S.D.N.Y. Aug. 18, 2022), Dkt. 25 (agreeing to arbitrate the day a response to Gemini's motion to compel arbitration was due);

Notice of Voluntary Dismissal, *Berdugo v. Gemini Trust Company, LLC*, No. 23-cv-60057 (S.D. Fla. Feb. 22, 2023), Dkt. 16 (dismissing putative class action arising from the Earn program the day before the response to Gemini's motion to compel arbitration was due).

The facts in this case are no different from other cases where arbitration was required.  The amended Gemini User Agreement that Plaintiffs agreed to when they logged in to their Gemini accounts after December 14, 2022 was, if not a clickwrap agreement, an equally valid sign-in wrap agreement or a hybrid of the two.  *See* Decl. ¶¶ 13–14.   The account login pages on Gemini's website notified users that, by logging into the account, the users "agree to Gemini's <u>USER AGREEMENT</u>."  *Id*. ¶¶ 13–14; Exs. 5 (underlining in original).  This disclosure is in the same or larger font as the rest of the webpage and uses a conspicuous black or blue (in case of hyperlinks) font against white background.  *Id.*  The pages are uncluttered and none of the relevant text or buttons are obscured or hidden on the page.  *Id.*

Each of these Plaintiffs logged in to Gemini's website shortly after the User Agreement was amended.  *Id*. ¶ 14.  When doing so, they necessarily accepted the terms of the hyperlinked User Agreement, as amended, including its arbitration clause.  *Id.* ¶¶ 13–14.  Plaintiffs are therefore bound by the agreement to arbitrate "any controversy, claim, or dispute arising out of or relating to this User Agreement or [Plaintiff's] relationship with Gemini . . . ." Ex. 3 at 107.  The Court should compel arbitration.

## III.   The Parties Have Delegated Issues of Scope and Arbitrability to the Arbitrator.

The Court should not decide whether Plaintiffs' allegations fall within the scope of the User Agreement's arbitration clause or any other issue beyond confirming that the parties agreed to arbitration.  The United States Supreme Court has repeatedly held that "if a valid [arbitration] agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, *a court may not decide the arbitrability issue*."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct.

524, 530 (2019) (emphasis added); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").

Accordingly, "[j]ust as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein*, 139 S. Ct. at 530. And the Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Id.* (quoting *First Options of Chi.*, 514 U.S. at 944); *see also, e.g., Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 209 (2d Cir. 2005) (enforcing agreement to delegate questions of "existence, scope or validity" of the agreement to the arbitrator); *accord Hidalgo*, 468 F. Supp. 3d at 661 (enforcing delegation clause). Thus, where an arbitration agreement includes a delegation clause, "neither the Supreme Court, nor this Court, nor *any* court, has the authority to decide whether and to what extent these parties' disputes are arbitrable." *Revis v. Schwartz*, 192 A.D.3d 127, 141 (2d Dep't 2020) (recognizing that it would be error to inquire into the scope of an arbitration agreement that includes a delegation clause), *aff'd*, 38 N.Y.3d 939 (2022).

The User Agreement expressly provides that "*that any dispute about the scope of this User Agreement to arbitrate and/or the arbitrability of any particular dispute shall be resolved in arbitration in accordance with this section.*" Ex. 3 at 107 (emphasis added). This language is clear and unmistakable evidence of delegation. *See, e.g., Bar-Ayal v. Time Warner Cable Inc.*, 2006 WL 2990032, at **7–8 (S.D.N.Y. Oct. 16, 2006) (finding that a clause providing that "'the arbitrability of disputes shall be determined by the arbitrator' . . . constitutes sufficiently clear and

unmistakable evidence that the parties intended to have issues of arbitrability decided by the arbitrator"). As a result of this delegation clause in the User Agreement, the Court need not go further to consider whether the particular claims alleged in this action fall within the scope of the clause and should compel arbitration.

## IV.   Plaintiffs' Claims Against Defendants Fall Within the Scope of the Arbitration Agreement.

Although the Court should not reach this issue in light of the User Agreement's delegation clause, Plaintiffs' claims do fall within the scope of the arbitration clause in the User Agreement. The User Agreement broadly provides that "**any controversy, claim, or dispute arising out of or relating to this User Agreement or your relationship with Gemini—past, present, or future—shall be settled solely and exclusively by binding arbitration**…." Ex. 3 at 107 (emphasis added). The Second Circuit has held that such language leaves "no doubt" that "any disputes with the Agreement's other signatory", *i.e.*, Gemini, must be arbitrated. *Contec Corp.*, 398 F.3d at 208; *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) ("The clause in this case, submitting to arbitration '[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause.").

In the Amended Complaint, Plaintiffs allege various causes of action against Defendants in connection with their use of the Gemini exchange platform, such as fraud, aiding and abetting fraud, negligent misrepresentation, unjust enrichment, declaratory judgment and alleged violations of securities laws and requirements. Am. Compl. ¶¶ 159–232. But the Earn Program was an optional program, only available to existing users of the Gemini platform. Decl. ¶ 4. As noted, a person could not become a user of the Gemini platform without first accepting the User Agreement, and each user had to accept the User Agreement as a part of logging into Gemini's website. *Id.* ¶¶ 3, 7, 13. As such, Plaintiffs' claims against Gemini *necessarily* arise out of or relate to their

"relationship with Gemini" and the User Agreement that governed Plaintiffs' access to and use of the entire Gemini platform, including their ability to participate in the Earn Program.

In addition, Plaintiffs' claims against non-signatories Cameron and Tyler Winklevoss must also be arbitrated under the plain language of the User Agreement which requires arbitration of disputes not only with Gemini but with "*any other party named or added as a co-defendant* along with Gemini" and such co-defendants are expressly designated "*a third-party beneficiary entitled to enforce this arbitration provision*." Ex. 3 at 108 (emphasis added).

And even without such contractual language, the Second Circuit law is clear that a signatory "is estopped from avoiding arbitration with a non-signatory 'when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" *Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co.*, 271 F.3d 403, 404 (2d Cir. 2001) (quoting *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999)). Furthermore, Cameron and Tyler Winklevoss are executive officers and founders of Gemini, Am. Compl. ¶¶ 14-15, and "[c]ourts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement." *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 650 (S.D.N.Y. 2011) (Buchwald, J.) (quoting *Campaniello Imports, Ltd. v. Saporiti Italia, S.p.A.*, 117 F.3d 655, 668 (2d Cir. 1997)); *accord Zambrana v. Pressler & Pressler, LLP*, 2016 WL 7046820, at *6 (S.D.N.Y. Dec. 2, 2016) ("Federal courts have consistently afforded agents the benefit of arbitration agreements entered into by their principles to the extent that the alleged misconduct relates to their behavior as officers or directors or in their capacities as agents of the corporation." (quoting *Hirschfield Prods., Inc. v. Mirvish*, 88 N.Y.2d 1054, 1056 (1996))).

13

In short, Plaintiffs' claims against Defendants "touch matters covered" by the User Agreement and are therefore arbitrable. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985); *see also Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 485–86 (1989) (holding that claims brought under the Securities Act of 1933 were arbitrable).

## V.   Plaintiffs Have Not Demonstrated That the Agreements Conflict as to the Agreement to Arbitrate.

Plaintiffs' suggestion that there are multiple agreements in play which "contradict each other" must be rejected.  Am. Compl. ¶ 145.  As a threshold issue, Plaintiffs have conspicuously declined to attach any of these documents to their Amended Complaint.[2]  The likely reason they have not done so is that *every single document they reference contains an agreement to arbitrate*, and would only emphasize the parties' undeniable and overwhelming intention to arbitrate these types of claims.

Moreover, no genuine dispute exists about *whether* Plaintiffs agreed arbitrate the claims they attempt to raise in this suit.  At most, Plaintiffs just question *how* the parties' arbitration should proceed—procedural issues an arbitrator can and should decide after a matter is referred to arbitration.  *See, e.g.*, *UBS Fin. Services, Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 655 (2d Cir. 2011) (holding that venue for arbitration is a procedural issue that the arbitrator should decide); *see also Cent. W. Va. Energy, Inc. v. Bayer Cropscience LP*, 645 F.3d 267, 274 (4th Cir. 2011) (finding that a court lacked jurisdiction to resolve a question about the proper venue for an

---

[2]   Despite being permitted an amendment, Plaintiffs chose to phrase nearly all of the pertinent allegations about these contracts in very general terms so as to avoid any admission concerning which contracts *these* individual Plaintiffs entered into with Gemini.  Am. Compl. ¶¶ 133–34.  As a result, no genuine conflict has been demonstrated.

arbitration where the question to be resolved was not "*whether* to proceed by arbitration, but *which arbitration panel* should decide certain issues"); Am. Compl. ¶ 145.

Legal ramifications, if any, of alleged modifications to an agreement to arbitrate are also within the purview of the arbitrator, not the court. *See, e.g.*, *Town of Amherst v. Granite State Ins. Co., Inc.*, 29 N.Y.3d 1016, 1017 (2017) (holding that "the issue of whether the later agreement between the parties affected the arbitrability of the dispute should be resolved by the arbitrator" (citation omitted)); *Matter of Estate of Cassone*, 63 N.Y.2d 756, 758 (1984) (holding that "[a]ny issue as to the validity of the substantive provisions of the contract (including its failure to reflect a meeting of the minds) would be for the arbitrator" to decide, and that "matters which postdate the existence of a valid agreement . . . do not affect arbitrability").

The only questions presently before the Court are whether the amended User Agreement is an enforceable contract and whether its terms included an agreement to arbitrate. Defendants have shown that both of these questions must be answered in the affirmative. Everything else can and should be decided by the arbitrator after the matter is referred to arbitration. Defendants' Motion to Compel Arbitration should be granted.

## VI.       This Action Should Be Stayed Pending Arbitration of Plaintiffs' Claims.

When, as here, the FAA governs an arbitration provision that covers Plaintiffs' claims, Section 3 of the FAA directs the district court to compel arbitration and stay those claims. *See* 9 U.S.C. § 3 (providing for a stay of court proceedings pending the resolution of arbitration); *see also e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (explaining this Code section). Accordingly, Defendants move to stay this case until the conclusion of the arbitration.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order (i) compelling Plaintiffs to arbitrate their claims in accordance with the applicable arbitration

agreement; and (ii) staying this action pending the outcome of arbitration.

Dated:  New York, New York
        April 7, 2023

                                        JFB LEGAL, PLLC

                                        By /s/ John F. Baughman

                                            John F. Baughman
                                            Maryia Y. Jones
                                            299 Broadway – Suite 1816
                                            New York, NY 10007
                                            (212) 548-3212

                                        *Attorneys for Gemini Trust
                                        Company, LLC, Tyler Winklevoss,
                                        and Cameron Winklevoss*