

James R. Serritella<br>
T/F: 212-960-8345<br>
jserritella@kandslaw.com

April 14, 2023

**VIA ECF**

Hon. Naomi Reice Buchwald, U. S. District Judge
U.S. District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 21A
New York, NY 10007

      Re:    *Picha et al. v. Gemini Trust Company, LLC. et al.*, Case No. 22-cv-10922

Dear Judge Buchwald:

      We write on behalf of Plaintiffs pursuant to Rule 2.B of Your Honor's Individual Rules to request a pre-motion conference to apprise the Court of certain improper class communications by Defendants, and if necessary for leave to move for an Order addressing, limiting, or curing such communications. Defendants have initiated improper communications with Gemini Earn investors (the "Class") via email, social media, and webpage/blog posts. These communications contain significant omissions and misstatements and may serve to manipulate Class members into ceding legal rights, and thus threaten to interfere with the proper administration of this class action. Plaintiffs therefore seek an order to protect the Class from further attempts at such manipulation.

      **I.**    **RELEVANT FACTUAL BACKGROUND**

      This case concerns "Gemini," Defendants' crypto-asset exchange and lending platform, and "Gemini Earn," the program through which Defendants offered Gemini interest accounts ("GIAs") to investors. Through Gemini Earn, investors lent crypto assets to Gemini in exchange for promised interest payments. As alleged in the Amended Complaint, Defendants failed to register the GIAs as securities, marketed the GIAs with false and misleading statements, omitted material information concerning the risks of Gemini Earn, and failed to return the crypto assets they borrowed, in violation of federal securities law and common law. Plaintiffs also allege that Defendants failed to disclose material information regarding Gemini's relationship with Genesis Global Capital, LLC ("Genesis"), its so-called partner and borrower in connection with the Earn program, to which it gave all Earn investors' crypto assets via Master Loan Agreements ("MLAs").

      On or around January 19, 2023, Genesis filed for Chapter 11 bankruptcy protection (the "Bankruptcy"). Since then, Defendants have taken it upon themselves to act on behalf of the Class and insert themselves into the Bankruptcy, despite not being a creditor of Genesis in their own right. Defendants have been in regular communication with the Class concerning the Bankruptcy through their "Gemini Earn Updates" webpage (the "Update Page"), which Defendants update

weekly, as well as through social media. This is what the Update Page currently says about Defendants' plan with Genesis to resolve the Bankruptcy (the "Term Sheet"):

> This plan is a critical step forward towards a substantial recovery of assets for all Genesis creditors. In addition, Gemini will be contributing up to $100 million more for Earn users as part of the plan, further demonstrating Gemini's continued commitment to helping Earn users achieve a full recovery….

Substantially similar language was used by Cameron Winklevoss in a series of tweets on February 6, 2023, as well as emailed directly to Earn investors.

On or around April 10, 2023, Gemini sent a purported notice (the "Bar Date Notice") to Class members concerning the Bankruptcy, and advising the Class that proof of claim must be filed by May 22, 2023 (the "General Bar Date"). A copy of the Bar Date Notice is submitted herewith as **Exhibit 1**. Gemini further advised the Class that for the most part they were not required to individually submit proof of claim, but that they should log in to their Gemini Earn accounts to confirm their balances prior to the General Bar Date. *See* Bar Date Notice at 2.

## II. COMMUNICATIONS BETWEEN PARTIES AND ABSENT CLASS MEMBERS MAY BE RESTRICTED

Rule 23(d) grants district courts the discretion to restrict communications between parties and absent class members in class action litigation. *See, e.g., Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-100 (1981). "Courts use Rule 23(d) to limit communications to protect class members from misleading communications from the parties or their counsel, because misleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally." *Dodona I, LLC v. Goldman, Sachs & Co.*, 300 F.R.D. 182, 184 (S.D.N.Y. 2014). "The Court's authority to regulate communications under Rule 23(d) also extends to communications that interfere with the proper administration of a class action, those that abuse the rights of members of the class, and situations in which there is a relationship that is inherently coercive." *Id*. A communication can be equally misleading for what it contains as for what it does not contain, as the "same policy concern applies where a party misleads class members by omitting critical information from its communications." *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005). Further, that the Class has not yet been certified has no bearing on whether the Court may use Rule 23(d) to protect it. *See, e.g., Ralph Oldsmobile Inc. v. GMC*, No. 99 Civ. 4567 (AGS), 2001 U.S. Dist. LEXIS 13893, at *5 (S.D.N.Y. Sept. 7, 2001).

## III. DEFENDANTS ARE ENGAGING IN COERCIVE AND MISLEADING COMMUNICATIONS WITH THE CLASS

The above-quoted communications to the Class in the Update Page and Bar Date Notice are "misleading, coercive, and otherwise interfere[s] with the proper administration of this class action." *Magtoles v. United Staffing Registry, Inc.*, No. 21-CV-1850 (KAM) (PK), 2022 U.S. Dist. LEXIS 160601 (E.D.N.Y. Sept. 6, 2022). First, the Update Page indicates that the Bankruptcy may result in a "substantial recovery of assets" for the Class, but it does not clarify what a "substantial recovery" would entail. Second, it proclaims that the Gemini-run page will instruct

Hon. Naomi Reice Buchwald
April 14, 2023
Page 3

the Class on how to participate in recovery, implying that their assets must be obtained through the Bankruptcy and by way of instructions provided by Gemini. While Gemini unilaterally terminated the MLAs with the Class, Gemini remains the custodian of the Earn accounts, thereby holding the Class' assets hostage and rendering such communications intrinsically coercive. *See Magtoles*, 2022 U.S. Dist. LEXIS at *12.

Third, the Update Page statement (which is targeted at the Class through at least three modes of communication) makes a glaring omission, in that it does not inform the Class of the strings attached to the "$100 million" contribution – namely, the release of all claims not only against Genesis and its parent DCG, **but also against Gemini**. Not once in their multiple update communications do Defendants mention that they will be requiring the Class to waive their rights to any claims against Defendants in order to receive a share of the **maximum** $100 million contribution Defendants intend to make to the bankrupt estate. As such, these communications are "factually and legally incomplete." *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 846 (2d Cir. 1980).

Even if Defendants had been more forthright in their communications with the Class, the very language of the Term Sheet unambiguously directs Defendants to coerce the Class. Specifically, the Term Sheet requires Gemini to "use commercially reasonable efforts **to encourage the Gemini Lenders to support the Transactions** through voting to accept the Amended Plan" (emphasis added). This is a distressing attempt to circumvent the Class members' legal rights by convincing them outside of a class-action framework to accept a fraction of their losses rather than seek the full amount to which they may be entitled.

Defendants are misleading the Class further by implying that mechanisms available in the Bankruptcy are the only way that they can provide and distribute the $100 million they are pledging. This is not the case. Should Defendants wish to act in good faith and contribute $100 million to assist the hundreds of thousands of Earn customers who have lost their investments, there is no barrier to making those funds immediately and directly available to their customers. The impact on the Bankruptcy would remain the same, as the claim of each individual Earn lender would decrease in proportion to the amount they receive from that $100 million contribution. Furthermore, such conduct would truly demonstrate that Defendants are intent on putting their customers right, not merely buying their way out of this class action.

Fourth, the Bar Date Notice also interferes with the administration of this lawsuit by quietly attempting to manipulate Class members into agreeing to revised arbitration provisions. Defendants' motion to compel arbitration is currently pending before this Court. At the heart of that motion are the changing and often conflicting provisions in Defendants' various written agreements on which Defendants are seeking to compel arbitration. As noted by Plaintiffs, Defendants recently revised their conflicting provisions to bring them more into alignment. Thus, any Class members who log in to their accounts to confirm their balances in accordance with the direction of the Bar Date Notice may thereby find themselves forced to accept these new provisions, thereby potentially forfeiting their rights to participate in this lawsuit.

For these and other reasons, Plaintiffs request a pre-motion conference to address these issues and if necessary obtain leave to move or cross-move for an appropriate order.

Hon. Naomi Reice Buchwald
April 14, 2023
Page 4

                                                    Respectfully submitted,

                                                    /s/ James R. Serritella

                                                    James R. Serritella

cc: Counsel for Defendants (via ECF)

Attachment