

James R. Serritella<br>
T/F: 212-960-8345<br>
jserritella@kandslaw.com

May 5, 2023

**VIA ECF**

Hon. Naomi Reice Buchwald, U.S. District Judge
U.S. District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

    Re:    *Picha et al. v. Gemini Trust Company, LLC et al.*, Case No. 22-cv-10922

Dear Judge Buchwald:

    We represent Plaintiffs in the above-referenced matter.  We write pursuant to Rule 2(E)(1) of Your Honor's Individual Rules to summarize Plaintiffs' arguments in opposition to Defendants' motion to compel arbitration (the "Motion").  In a nutshell, Plaintiffs' argument is that there never was a coherent arbitration agreement governing Plaintiffs and proposed class members, Defendants' attempt to unilaterally and secretly revise the agreements in an attempt to create a coherent arbitration agreement is invalid, that even despite these attempts there <u>still</u> is no coherent arbitration agreement or class-action waiver, and that there is no grounds on which to grant a stay of these proceedings.

    This case concerns Defendants' crypto-asset exchange and lending platform ("Gemini") and their "Gemini Earn" program, through which Defendants offered and sold Gemini interest accounts ("GIAs") to investors, and investors lent crypto assets to Gemini in exchange for promised interest payments.  As alleged in the Complaint, Defendants (*inter alia*) failed to register the GIAs as securities, marketed the GIAs with false and misleading statements, omitted material information concerning Gemini's relationship with Genesis Global Capital, LLC ("Genesis") and the risks of Gemini Earn, and failed to return the crypto assets they borrowed, in violation of federal securities law and common law.  Defendants have stated that roughly 340,000 investors have over $900 million worth of assets in Gemini Earn.

    Prior to December 2022, the relationship between Gemini and Earn investors was subject to three agreements: the Master Loan Agreement (the "MLA"), the Gemini User Agreement (the "GUA"), and the Gemini Earn Program Terms and Authorization Agreement (the "GEA") (collectively, the "Agreements").  As detailed in Plaintiffs' opposition, the Agreements have drastically-conflicting provisions concerning dispute resolution and which of the Agreements governs, such that there is functionally no coherent agreement whatsoever as to how a party is supposed to proceed in arbitration.  A handy chart highlighting some of the conflicting provisions is submitted as Exhibit H to Plaintiffs' opposition.

Page 2

On November 16, 2022, following significant turmoil in the crypto market and subsequent financial distress, Defendants halted the Gemini Earn program and refused to honor any further investor redemptions – in other words, closing down and refusing to give investors their money back, and thereby triggering this litigation.

Shortly after this development, and presumably in anticipation of immediately-foreseeable class-action litigation, Defendants unilaterally (and largely secretly) re-wrote all of the Agreements in an apparent attempt to harmonize the conflicting terms and insert class-action waivers into all of the Agreements.  The GUA and GEA were modified on or around December 14, 2022, without any notice whatsoever to Gemini Earn customers, despite express terms in the GEA stating that any material changes to that agreement would be communicated to all parties.

As for the MLA, Defendants sent an email (the "Opt-Out Email") to Gemini Earn investors on December 23, 2022 – around 8:40 P.M. on the Friday evening before Christmas – Defendants sent an email to their Gemini Earn investors advising them that they had amended the MLA, and implying that the only change was to the arbitration forum (from AAA to NAM) without mentioning the inclusion of a class-action waiver or other material changes.  Investors were informed that if they did not wish to be bound by the new MLA, they should not access Gemini, and had to email customer support saying they do not agree within 7 days, or by December 30, 2022.  The actual terms of the newly-modified MLA (hereinafter the "mMLA") were not disclosed in the Opt-Out Email, and indeed the only way investors could see the changed terms would have been to log into their account, which (in Defendants' eyes) would constitute their acceptance of the mMLA.  Notably, by its own terms, any modification to the MLA is effective only if signed by both parties.

None of the Plaintiffs agreed to – let alone signed – the mMLA, and all but one of the Plaintiffs affirmatively opted out of the mMLA pursuant to the procedures set forth by Gemini.  Nevertheless, Gemini's motion to compel largely rests on the presumption that the mMLA is in effect or that no version of the MLA is applicable.

As for the modified GUA and GEA (hereinafter the "mGUA" and "mGEA" respectively), none of the material amendments to either agreement was ever communicated to – let alone assented to by – Gemini Earn users, in breach of both the express terms of the GEA and general principles of contract law.  The applicable jurisprudence as to under which circumstances online agreements such as these can be deemed valid is to lengthy to delve into in this letter, but suffice to say Defendants have not begun to prove how Plaintiffs and class members had knowledge of the applicable terms of the mGUA, mGEA, and mMLA (the terms of which were not only kept from investors, but actively misrepresented to them in the Opt-Out Email) sufficient for them to manifest assent.

Accordingly, there are multiple sets of Gemini Earn investors who might be subject to different combinations of the Agreements, with each combination having conflicting provisions.  Investors who have not accessed their accounts since before December 2022 might be deemed subject to the GUA, GEA, and mMLA.  Investors who affirmatively opted out of the mMLA but accessed their accounts after December 2022 might be subject to the MLA, mGUA, and mGEA.  Investors who affirmatively opted out and did not access their accounts might be subject to the original MLA, GUA, and GEA.  And investors who did not opt out and accessed their accounts

might be subject to all of the modified agreements, assuming that none of these modifications are found to be legally invalid per their own terms.

Each of these four scenarios involves three different agreements with substantially-conflicting provisions as to how, where, and before what tribunal arbitration is to proceed, whether class actions are permitted, which agreement controls, how modifications are to be made, and so forth.  Plaintiffs have identified at least fifty-four different permutations of which agreement may be deemed in control for any given investor, but given the number of applicable terms at issue the true number of possible variations is likely a multiple even of that.

Moreover, all of the Agreements were unilaterally drafted by Defendants, with no input or negotiation from Plaintiffs or any of the Gemini Earn investors.  Thus, any interpretation of this rat's nest of conflicting terms must be made against Defendants.  Quite simply, there is no coherent set of terms on which this Court can compel this matter to arbitration.

As to Defendants' request for a stay, any motion for injunctive relief must demonstrate a likelihood of irreparable harm and either substantial likelihood of success on the merits or sufficient issues as to the merits coupled with a balance of equities in favor of the movant.  Defendants have not and cannot demonstrate irreparable harm by proceeding in this litigation while the Motion is pending.  If anything, Defendants will be <u>less</u> harmed if they proceed in this class action, as opposed to having to repeat discovery (not to mention pleadings, motion practice, and so forth) hundreds of thousands of times in individual arbitrations with every injured Gemini Earn investor.  And while Plaintiffs here assume *arguendo* that Defendants have raised sufficient issues under the second prong of the merit requirement, it is beyond comprehension how their misrepresentations to Gemini Earn users, mishandling and seizure of their assets, and dishonest attempts to re-write their own contractual obligations might lead the Court to conclude that the balance of equities tips in their favor.

For these and other reasons as set forth in Plaintiffs' opposition papers, Plaintiffs respectfully request that the Motion be denied.

Respectfully submitted,

/s/ James R. Serritella

James R. Serritella

cc:    Counsel for Defendants (via ECF)