UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRENDAN PICHA, MAX J. HASTINGS, KYLE MCKUHEN, JAMES DEREK TAYLOR, and CHRISTINE CALDERWOOD, Individually and On Behalf of All Others Similarly Situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>GEMINI TRUST COMPANY, LLC, TYLER WINKLEVOSS, and CAMERON WINKLEVOSS,<br><br>*Defendants.* | No. 1:22-cv-10922-NRB<br><br>Hon. Naomi Reice Buchwald |

**DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION TO COMPEL ARBITRATION**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 1

A.     No genuine dispute of fact exists that Plaintiffs accepted the User Agreement. ...................... 1

B.     The arbitrator must decide the issues of arbitrability. ........................................... 4

C.     No genuine conflict exists because every User Agreement requires arbitration. ..................... 4

D.     An arbitration clause can be amended. ......................................................... 7

E.     Claims against the Winklevosses should be compelled to arbitration. ............................... 9

F.     The class action waiver is valid. .............................................................. 9

## TABLE OF AUTHORITIES

CASES

PAGE(S)

*Al Maya Trading Establishment v. Glob. Exp. Mktg. Co.*,
   2014 WL 3507427, at *3 n.2 (S.D.N.Y. July 15, 2014) ..................................................6

*Anwar v. Fairfield Greenwich Ltd.*,
   742 F. Supp. 2d 367 (S.D.N.Y. 2010) .............................................................................8

*Bristol v. Securitas Sec. Servs. USA, Inc.*,
   597 F.Supp.3d 574 (S.D.N.Y. 2022) ...............................................................................6

*Bronson v. Algonquin Lodge Ass'n Inc.*,
   295 A.D.2d 681 (3d Dep't 2002) .....................................................................................3

*Brooklyn Union Gas Co. v. NewFields Cos., LLC*,
   2020 WL 7770993, at *5 (E.D.N.Y. Dec. 30, 2020) .......................................................7

*Cooper v. New Rochelle*,
   925 F.Supp.2d 588 (S.D.N.Y. 2013) ...............................................................................2

*Ditullio v. Vill. of Massena*,
   81 F.Supp.2d 397 (N.D.N.Y. 2000) .................................................................................3

*Dreyfuss v. Etelecare Glob. Sols.-U.S. Inc.*
   349 F. App'x 551 (2d Cir. 2009) .....................................................................................6

*Guerriero v. Sony Elecs. Inc.*,
   2022 WL 736428, at **3–4 (S.D.N.Y. Mar. 11, 2022) .................................................10

*Heyman Cohen & Sons v. M. Lurie Woolen Co.*,
   232 N.Y. 112 (1921) .......................................................................................................5

*Hudson Specialty Ins. Co. v. N.J. Transit Corp.*,
   2015 WL 3542548, at *7 (S.D.N.Y. June 5, 2015) .........................................................6

*Hojnowski v. Buffalo Bills, Inc.*,
   995 F.Supp.2d 232 (W.D.N.Y. 2014) ..............................................................................6

*Hollander v. American Cyanamid Co.*,
    172 F.3d 192 (2d Cir. 1999)................................................................................3

*Kai Peng v. Uber Techs., Inc.*,
    237 F. Supp. 3d 36 (E.D.N.Y. 2017) ..................................................................8

*Matter of Instituto De Resseguros Do Brasil v. First State Ins.* Co.,
    221 A.D.2d 266 (1st Dep't 1995) ........................................................................8

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)..................................................................................3

*Nayal v. HIP Network Servs IPA, Inc.*,
    620 F.Supp.2d 566 (S.D.N.Y. 2009) ..................................................................8

*Opals on Ice Lingerie v. Bodylines Inc.*
    320 F.3d 362 (2d Cir. 2003)................................................................................6

*Oppenheimer & Co. v. Neidhardt*,
    56 F.3d 352 (2d Cir. 1995)..................................................................................2

*Patterson v. Raymours Furniture Co., Inc.*,
    659 F. App'x 40 (2d Cir. 2016) ....................................................................... 10

*Ragab v. Howard*,
    841 F.3d 1134 (10th Cir. 2016) ..........................................................................7

*Resorb Networks, Inc. v. YouNow.com*
    51 Misc. 3d 975 (Sup. Ct. N.Y. Cnty. 2016)......................................................2

*Rizzuto v. De Blasio*,
    2019 WL 1433067, at *3 (E.D.N.Y. Mar. 29, 2019) ........................................ 3

*Schurr v. Austin Galleries of Ill.*,
    719 F.2d 571 (2d Cir. 1983)................................................................................5

*Smith/Enron Cogeneration Ltd. P'Ship, Inc. v. Smith Cogeneration Int'l., Inc.*,
    198 F.3d 88 (2d Cir. 1999)..................................................................................8

*Starke v. SquareTrade, Inc.*,
   913 F.3d 279 (2d Cir. 2019)..................................................................................5

*Sultan v. Coinbase, Inc.*,
   354 F.Supp.3d 156 (E.D.N.Y. 2019) ...................................................................4

*V'Soske v. Barwick*,
   404 F.2d 495 (2d Cir. 1968).................................................................................5

*Wework Cos. Inc. v. Zoumer*,
   2016 WL 1337280, at *5 (S.D.N.Y. Apr. 5, 2016)...............................................6

*Wu v. Uber Techs., Inc.*,
   78 Misc.3d 551 (Sup. Ct. Bronx Cnty. Dec. 20, 2022) .......................................4

**Rules & Statutes**

9 U.S.C. § 3...........................................................................................................10

N.Y. R. Prof'l Conduct § 3.7..................................................................................3

INTRODUCTION

Plaintiffs' Opposition (the "Opposition") to Defendants' Motion to Compel Arbitration (the "Motion") offers no basis for allowing Plaintiffs to avoid their agreement to arbitrate.  Plaintiffs fail to rebut any of the facts which confirm that Plaintiffs accepted Gemini's User Agreement by logging in to Gemini's website after December 14, 2022.  Plaintiffs also fail to distinguish the many cases cited by Defendants in which arbitration was compelled under analogous circumstances.  The Court need not go further than this to compel arbitration.

Recognizing that neither the facts nor the law are on their side, Plaintiffs resort to distraction, but these red herrings do not work.  Plaintiffs complain that the arbitration clause was amended with respect to non-essential terms, such as arbitral forum and arbitration rules.  But Plaintiffs cannot deny that every single version of the User Agreement includes an arbitration clause with a valid delegation provision and class action waiver.  Neither can Plaintiffs rebut controlling on-point authorities that compel their claims to arbitration.

ARGUMENT

**A.     No genuine dispute of fact exists that Plaintiffs accepted the User Agreement.**

Plaintiffs' Opposition fails because *Plaintiffs do not deny logging in to Gemini's website after December 14, 2022 and thereby manifesting assent to the Gemini User Agreement in effect at that time, including its agreement to arbitrate.*  The Gemini website log in page notified the user that the dispute resolution clause had changed and said: "By clicking 'Sign In' below, I agree to Gemini's USER AGREEMENT…."  Freeman Decl. ¶ 13, Ex. 5 (Doc. 53, 53-5) (emphasis in original).  Each Plaintiff clicked the "Sign In" button on a specified date and thereby accepted the December 14, 2022 User Agreement—including its agreement to arbitrate this dispute.  *Id.* ¶ 14.  Plaintiffs do not deny these facts.

Instead, Plaintiffs' Declarations—which are nearly identical even though they are supposed to

be from five different individuals—at best state that *they cannot recall whether they accessed their Gemini account after December 14, 2022.  See, e.g.,* Declaration of Brendan Picha ¶ 10 (Doc. 62) ("Picha Decl."). [1]  This purported lack of personal knowledge does not create a genuine dispute.  *See, e.g.*, *Cooper v. New Rochelle*, 925 F.Supp.2d 588, 605 (S.D.N.Y. 2013) (denial based on a lack of knowledge or information is insufficient to contest a disputed fact under summary judgment standard).  Nor do Plaintiffs create any genuine dispute of fact by a vague, conclusory statement that they "never agreed" when uncontroverted facts confirm the exact opposite.  *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995) ("[T]o put such matters in issue, it is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends. . . . [T]he party opposing . . . must submit evidentiary facts showing that there is a dispute of fact to be tried.").

Plaintiffs' suggestion that they need to review Gemini's "data logs" to admit or deny factual assertions *about their own actions* is, at best, a red herring.  *See, e.g.,* Picha Decl. ¶ 10.  Either Plaintiffs logged into the Gemini website on the dates alleged, or they did not, or they do not remember.  More information from Gemini, which would be consistent with what is already asserted in the Freeman Declaration, would not reflect Plaintiffs' personal knowledge, has no value here, and is a transparent attempt to avoid confronting the fact that Plaintiffs *cannot in good faith deny logging in to Gemini's website after December 14, 2022.*

The authority cited by Plaintiffs, *Resorb Networks, Inc. v. YouNow.com* does not stand for the proposition for which Plaintiffs cite it, *i.e.*, that technical computer data must always be produced in its native format in lieu of being summarized in an affidavit.  51 Misc. 3d 975, 982-83 (Sup. Ct. N.Y. Cnty. 2016).  Rather, in *Resorb*, it was "not clear that the phrase 'Terms of Use' is a hyperlink which takes the user to the Terms of Use".  *Id.* at 981.  Neither was it clear where on the defendant's website

---

[1]    Plaintiffs' Declarations are analogous, so only one is cited for brevity.

the "Terms of Use" were located.  *Id*.  By contrast, Gemini established that its uncluttered "Log In" page contained a conspicuous, all-caps hyperlink to the "UNDERLINE USER AGREEMENT".  Freeman Decl. ¶ 13, Ex. 5 (emphasis in original).

The declaration from Plaintiffs' counsel, Decl. of James Serritella (Doc. 58),  also does not cure the obvious deficiencies in the Plaintiffs' Declarations, to the extent the Court can even consider it.[2]  Motions to compel arbitration are treated like a motion for summary judgment, in which "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4); *Meyer v. Uber Techs., Inc*., 868 F.3d 66, 74 (2d Cir. 2017) (applying summary judgment standard).  A declaration from Plaintiffs' counsel purporting to make factual assertions of which he could not possibly have personal knowledge does not satisfy these requirements and should be disregarded.  *See, e.g., Ditullio v. Vill. of Massena*, 81 F.Supp.2d 397, 403 (N.D.N.Y. 2000) (refusing to consider an attorney's affidavit to the extent it contains factual assertions not made upon personal knowledge and/or legal arguments); *Bronson v. Algonquin Lodge Ass'n Inc*., 295 A.D.2d 681, 682 (3d Dep't 2002) (same); *see also Hollander v. American Cyanamid Co*., 172 F.3d 192, 198 (2d Cir. 1999) (affirming decision striking attorney affidavit where it was "riddled with inadmissible hearsay, conclusory statements and arguments, and information clearly not made on the affiant's personal knowledge") (abrogated on other grounds) (internal quotations omitted). The same is true for the Opposition's references to the Plaintiffs' First Amended Complaint, which was not a sworn pleading but was signed only by Plaintiffs' counsel.  This is not competent evidence.

Plaintiffs also do not even *try* to distinguish the many cases cited by Defendants' Motion in

---

[2]    An attorney may not represent a party in a case where the attorney will be called as a witness.  *See Rizzuto v. De Blasio*, 2019 WL 1433067, at *3 (E.D.N.Y. Mar. 29, 2019); N.Y. R. Prof'l Conduct § 3.7.

which New York courts have compelled arbitration under circumstances similar to those here. *See, e.g., Meyer,* 868 F.3d at 80 (finding an agreement to arbitrate where the plaintiff consented to arbitration in a website's terms of use while registering for an online account); *accord Sultan v. Coinbase, Inc*., 354 F.Supp.3d 156, 159, 162 (E.D.N.Y. 2019); *Wu v. Uber Techs., Inc.,* 78 Misc.3d 551, 573–74 n.6 (Sup. Ct. Bronx Cnty. Dec. 20, 2022).

In sum, no genuine dispute exists that each of these Plaintiffs logged in to Gemini's website platform after December 14, 2022 and by doing so accepted the December 14, 2022 User Agreement and its arbitration clause. The facts and law are clear: an agreement to arbitrate exists.

**B.     The arbitrator must decide the issues of arbitrability.**

Realizing that neither the facts nor the law are on their side, Plaintiffs try to muddy the waters by claiming that that the arbitration agreement became invalid simply because Gemini amended it to name a different arbitral forum and rules governing arbitration proceedings. These arguments fail under the settled law.

Plaintiffs do not (because they cannot) deny that the User Agreement has at all times contained a valid delegation clause. Freeman Decl. Ex. 3 at 107 (Doc. 53); Pls.' Opp. Ex. B at 77 (Doc. 58-2), Ex. D at 77 (Doc. 58-4). Indeed, Plaintiffs do not even try to address any of the cases cited by Gemini, consistently upholding the validity of similarly worded delegation clauses. Gemini's Mem. 10-12 (Doc. 52) (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019); *Contec Corp. v. Remote Solution, Co.*, *Ltd.*, 398 F.3d 205, 209 (2d Cir. 2005)). These controlling authorities leave no doubt that the arbitrator, not the Court, must resolve all questions regarding arbitrability of Plaintiffs' claims.

**C.     No genuine conflict exists because every User Agreement requires arbitration.**

However, even if the Court is the proper forum to address the merits of Plaintiffs' arguments, they fail because the existence of multiple arbitration clauses just means that "[t]he parties' intentions

were unmistakable: They wished to arbitrate any dispute that might arise between them." *Matter of Willis*, 944 F.3d 577, 582 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 2828 (2020) (compelling arbitration despite competing contracts and explaining that "*[al]hough the agreements differ over procedural details, they speak with one voice about whether to arbitrate*.") (emphasis added).  As the Fifth Circuit has wisely stated: "We will not shut our eyes to an agreement that demonstrates a baseline intent to arbitrate just because it contains inconsistent terms about procedural minutiae." *Id.*

The outcome should be no different here.  In New York, a binding contract exists where there is "[a] manifestation of mutual assent [that] must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Starke v. SquareTrade, Inc*., 913 F.3d 279, 289 (2d Cir. 2019); *Schurr v. Austin Galleries of Ill*., 719 F.2d 571, 576 (2d Cir. 1983) (requiring a meeting of the minds of the parties as to "all essential terms").  In other words, "all the terms contemplated by the agreement need not be fixed with complete and perfect certainty for a contract to have legal efficacy." *V'Soske v. Barwick*, 404 F.2d 495, 500 (2d Cir. 1968).   Invalidating an entire contract because it is too indefinite to enforce "is at best a last resort…" *Heyman Cohen & Sons v. M. Lurie Woolen Co*., 232 N.Y. 112, 114 (1921) (Cardozo, J.).

Significantly, *every single User Agreement attached to Plaintiffs' Opposition includes an agreement to arbitrate*.  *See* Pls.' Opp. Ex. B at 77-90, Ex. D at 77-90.  So does the User Agreement offered by Defendants.  Freeman Decl. Ex. 3 at 107.  Indeed, every single agreement before the Court includes an arbitration clause, as illustrated in **<u>Exhibit 1</u>**.  Thus, no matter which of these contracts was operative, these parties consistently and repeatedly agreed to arbitrate their disputes, and Defendants are moving to compel arbitration under the User Agreement.

At bottom, Plaintiffs are asking this Court to find that the procedural nuances of some hypothetical future arbitration —things like the arbitral forum, the arbitration venue, or the arbitration

rules—are so essential to an arbitration agreement that a purported failure to agree on them requires the *entire arbitration agreement* to be set aside. Pls.' Opp. at 3-4. But Plaintiffs' argument is contrary to the law. Courts in the Second Circuit, including this one, "*have routinely rejected the argument that the procedural rules governing arbitration constitute essential terms*." *Hudson Specialty Ins. Co. v. N.J. Transit Corp.*, 2015 WL 3542548, at *7 (S.D.N.Y. June 5, 2015) (emphasis added); *accord Bristol v. Securitas Sec. Servs. USA, Inc.*, 597 F.Supp.3d 574, 578 (S.D.N.Y. 2022); *Wework Cos. Inc. v. Zoumer*, 2016 WL 1337280, at *5 (S.D.N.Y. Apr. 5, 2016); *Al Maya Trading Establishment v. Glob. Exp. Mktg. Co.*, 2014 WL 3507427, at *3 n.2 (S.D.N.Y. July 15, 2014); *Hojnowski v. Buffalo Bills, Inc.*, 995 F.Supp.2d 232, 236–38 (W.D.N.Y. 2014). Since the procedural aspects of arbitration are non-essential terms and *every contract before this Court agrees on the essential terms—i.e.*, that the parties intended to resolve their disputes through individual arbitration instead of a class action in court—Plaintiffs' argument does not permit them to avoid arbitration.

None of the cases cited by Plaintiffs compel a different outcome. *Opals on Ice Lingerie v. Bodylines Inc.* did not meaningfully consider the distinction between essential terms and non-essential terms, but it also can be distinguished on its facts: it involved a situation where the main contract containing the arbitration agreement between the parties was deemed void *ab initio* because it was forged. 320 F.3d 362, 370 (2d Cir. 2003). Although the parties had faxed other documents back and forth containing different arbitration clauses, they ultimately had never accepted a single document with a consistent set of arbitration procedures specified. *Id.* at 365–67. Even if one accepts Plaintiffs' (unsupported) positions, that is obviously not the case here. Plaintiffs complain that there are *too many* agreements to arbitrate, not that there was *never* any agreement to arbitrate.

Plaintiffs' reliance on *Dreyfuss v. Etelecare Glob. Sols.-U.S. Inc.* is equally misplaced. 349 F. App'x 551, 552 (2d Cir. 2009). In *Dreyfuss*, the court declined to enforce an agreement to arbitrate

because the movant failed to offer a complete copy of the relevant agreement in support of its motion to compel arbitration. *Id.* at 554 (finding that movant's "suggestion that the Court simply enforce the two-page fragment as though it were the full document runs afoul of basic contract principles")  Here, Defendants produced the entire User Agreement, so *Dreyfuss* is inapposite.[3]  *See* Freeman Decl. Ex. 3; *Hojnowski.*, 995 F. Supp. at 237 (distinguishing *Dreyfuss* because "there is no dispute that the complete agreement has been … provided to this Court").

Plaintiffs also rely on *Ragab v. Howard*, a 2016 Colorado case declining to compel arbitration because there was "no language in the six agreements that suggests one contract overrides the others, and we cannot arbitrarily pick one to enforce because doing so could violate the other five."  841 F.3d 1134, 1138 (10th Cir. 2016).  However, *Ragab*—a 2-1 decision with a well-reasoned dissent by (now) Supreme Court Justice Gorsuch—does not control here.  *Id.* at 1139.   Colorado law clearly diverges from New York law in that the procedural aspects of arbitration are apparently considered "essential terms" of the contract.[4]  As noted above, New York courts have reached the exact opposite conclusion, and have "routinely rejected the argument that the procedural rules governing arbitration constitute essential terms."  *Hudson Specialty Ins. Co.,* 2015 WL 3542548, at *7.  And at least one New York court has declined to apply *Ragab*.  *Brooklyn Union Gas Co. v. NewFields Cos., LLC*, 2020 WL 7770993, at *5 (E.D.N.Y. Dec. 30, 2020).

> ### D.     An arbitration clause can be amended.

Plaintiffs' attempt to cast the December 14, 2022 amendment to the User Agreement as improper also fails.  The mere fact that a contract is offered on a take-it-or-leave-it basis does not render

---

[3]   The same is not true of Plaintiffs' exhibits, which are obviously missing some text, including in the sections related to arbitration.  *See, e.g.,* Pls.' Opp. Ex. B (Doc. 58-2 at 78-79).

[4]   The majority did not squarely address which of the conflicting terms in the competing arbitration clauses were essential or non-essential terms.  841 F.3d at 1136–39.

it unconscionable.  *Nayal v. HIP Network Servs IPA, Inc*., 620 F.Supp.2d 566, 571–72 (S.D.N.Y. 2009).  Nor is there anything wrong with amending a contract's arbitration clause.  To the contrary, parties "are free to enlarge, restrict, modify, amend or terminate their agreement to arbitrate."  *Matter of Instituto De Resseguros Do Brasil v. First State Ins*. Co., 221 A.D.2d 266, 266 (1st Dep't 1995) (citations omitted).

The timing of an amendment to an arbitration agreement, as compared to an event that might potentially require arbitration proceedings, also does not affect its enforceability or imply any wrongdoing.  *See, e.g., Smith/Enron Cogeneration Ltd. P'Ship, Inc. v. Smith Cogeneration Int'l., Inc*., 198 F.3d 88, 99 (2d Cir. 1999) (enforcing an amended arbitration agreement where the conduct at issue predated the amendment); *Kai Peng v. Uber Techs., Inc*., 237 F. Supp. 3d 36, 51–52 (E.D.N.Y. 2017) (same); *Wu*, 78 Misc.3d at 588–89 (enforcing an agreement to arbitrate where amendments to the arbitration clause were made after the plaintiff filed the lawsuit).

With or without the December 14, 2022 amendment, Defendants would be moving to compel arbitration because the User Agreement has always contained an arbitration clause.  Freeman Decl. ¶ 10.  However, even if Gemini added an arbitration clause for the first time after Genesis Global Capital LLC ("Genesis") froze the Earn funds on November 16, 2022, Plaintiffs would still be required to arbitrate because the User Agreement has a change-in-terms clause in which Gemini "reserve[d] the right to change any of these terms and conditions at any time."  *See* Freeman Decl. Ex. 3 at 3 (Doc. 53-3); Pls.' Opp. Ex. B at 2 (Doc. 58-2), Ex. D at 2 (Doc. 58-4).   When a contract includes this clause, unilateral amendments are enforceable "so long as the 'universe of terms which could be altered or affected' is contemplated in the change-in-terms clause."  *Anwar v. Fairfield Greenwich Ltd*., 742 F. Supp. 2d 367, 373 (S.D.N.Y. 2010) (quoting *Stone v. Golden Wexler & Sarnese, P.C*., 341 F.Supp.2d 189, 195 (E.D.N.Y. 2004)).  This criterion is readily satisfied here because the User Agreement has

always included an arbitration clause.  Freeman Decl. ¶ 10, Ex. 3 at 107-08.

**E.    Claims against the Winklevosses should be compelled to arbitration.**

Plaintiffs posit that their claims against the Winklevoss brothers must proceed in court because the brothers are not parties to the User Agreement.  However, courts, including this one, routinely allow non-signatory agents of a signatory to enforce arbitration clauses, as Gemini recited in its brief.  Defs.' Mem. 12-14.  Plaintiffs do not rebut the cited authorities or any of the multiple grounds on which the Winklevoss brothers can compel arbitration of Plaintiffs' claims against them, including: the clear contractual language which requires arbitration of disputes with "any other party named or added as a co-defendant along with Gemini" (Freeman Decl. Ex. 3 at 108); the intertwined nature of the claims against Gemini and the Winklevosses; and the brothers' role as Gemini's founders and executives.  Defs.' Mem. 13.  Plaintiffs' unsupported attempt to split off their claims against the Winklevoss brothers and keep them in Court should be rejected.

**F.    The class action waiver is valid.**

Plaintiffs' challenges to the class action waiver are equally weak.

*First*, the presence or absence of a class action waiver in the Master Loan Agreement or in the Gemini Earn Program Terms and Authorization Agreement are irrelevant because Defendants seek to compel arbitration under the User Agreement.  And a class action waiver has always been present within the User Agreement's arbitration clause.  Freeman Decl. Ex. 3 at 112-13 (Doc. 53); Pls.' Opp. Ex. B at 79 (Doc. 58-2), Ex. D at 81 (Doc. 58-4).

*Second*, Plaintiffs contradict themselves by arguing, on one hand, that the December 23, 2022 amendment to the Master Loan Agreement was invalid because Plaintiffs did not execute it and, on the other hand, that its merger clause controls and invalidates the class action waiver in the User Agreement. Pls.' Opp. 14-15, 17-18.  To be sure, the Master Loan Agreement "supersedes any *prior* . . .  agreements", not subsequent agreements.  Pls.' Opp. Ex. A at § XVI.  Plaintiffs

consented to the terms of the December 14, 2022 User Agreement—including its class action waiver—*after* entering into the original Master Loan Agreement, therefore its merger clause does not apply.[5]  Rather, the December 14, 2022 User Agreement's merger clause governs.  Freeman Decl. Ex. 3 at 102.

*Third*, Plaintiffs assert that the class action waiver is invalid because it "appears to contractually forbid proceedings brought by government authorities."  Pls.' Opp. 18.  But the waiver's reference to "private attorney general litigation" does no such thing.  "Private attorney general" is a widely used term of art that refers to private attorneys claiming to pursue an action in the public interest, and class action waivers using this term are valid and enforceable.  *See, e.g., Patterson v. Raymours Furniture Co., Inc.*, 659 F. App'x 40, 41–42 n.1, 44 (2d Cir. 2016), *as corrected* (Sept. 14, 2016) (class action waiver which prohibited private attorney general proceedings was enforceable); *Guerriero v. Sony Elecs. Inc.*, 2022 WL 736428, at **3–4 (S.D.N.Y. Mar. 11, 2022) (same and also striking class allegations).

For the above reasons, Defendants respectfully request that the Court compel Plaintiffs to arbitrate their claims and stay this action pending the outcome of arbitration.[6]

Dated: New York, NY
    May 19, 2023

                                            JFB LEGAL, PLLC

                                            By /s/ John F. Baughman
                                            John F. Baughman
                                            Maryia Y. Jones
                                            299 Broadway – Suite 1816

---

[5]   Plaintiffs became participants in the Earn Program some time prior to November 16, 2022 by entering into the Master Loan Agreement and lending their crypto assets, at interest, to Genesis which froze these funds on November 16, 2022.  Am. Compl. ¶¶ 38, 82-83, 142-44.

[6]   Plaintiffs misconstrue the relief requested by Gemini and argue that the filing of a motion to compel arbitration does not automatically stay litigation.  Pls.' Opp. 20.  But Gemini only requests a stay in the event the Court grants its motion to compel arbitration, as expressly mandated by the FAA.  9 U.S.C. § 3.

New York, NY 10007
(212) 548-3212
*Attorneys for Gemini Trust Company,*
*LLC, Tyler Winklevoss, and Cameron*
*Winklevoss*