UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X

BRENDAN PICHA, MAX J. HASTINGS, KYLE
MCKUHEN, JAMES DEREK TAYLOR, and CHRISTINE
CALDERWOOD, Individually and on behalf of
all others similarly situated,

                 Plaintiffs,

       - against -

GEMINI TRUST COMPANY, LLC, TYLER
WINKLEVOSS, and CAMERON WINKLEVOSS

                Defendants.

---------------------------------------X

**MEMORANDUM AND ORDER**

22 Civ. 10922 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Gemini Trust Company, LLC ("Gemini") and Tyler and Cameron Winklevoss (together the "individual defendants," and collectively with Gemini the "defendants") bring this motion to compel arbitration and stay the proceeding brought by putative class action plaintiffs Brendan Picha, Max J. Hastings, Kyle McKuhen, James Derek Taylor, and Christine Calderwood (together the "plaintiffs" or "named plaintiffs"). See ECF No. 51. Defendants argue that the case should be heard in arbitration, as required by every agreement between the parties and their various modifications. See ECF No. 52 ("Mot.") at 14. In response, plaintiffs claim that Gemini's modifications are invalid, they would have never accepted the various modifications to these agreements, and due to inconsistencies between these agreements, there is no agreement to

1

arbitrate.  See ECF No. 57 ("Opp.") at 1.  For the reasons stated below, the defendants' motion to compel arbitration is granted and the case is stayed pending the outcome of the arbitration.

## BACKGROUND

### A. Factual Background

Plaintiffs are Gemini account holders who participated in the Gemini Earn Program.  See ECF No. 53, Declaration of Travis Freeman ("Freeman Decl.") ¶ 4; ECF No. 47, Amended Complaint ("Am. Compl.") ¶¶ 8-12.  Gemini was founded in 2014 by Tyler and Cameron Winklevoss as a digital asset exchange and custody business.  See ECF No. 12, ("Answer") at Preliminary Statement ¶¶ 1-2.  Tyler and Cameron Winklevoss are executive officers of Gemini.  Mot. at 13.

Between 2016 and 2021, plaintiffs registered for individual accounts on Gemini's website.[1]  See Freeman Decl. ¶ 6.  As part of the registration process, each user was required to agree to Gemini's User Agreement (the "User Agreement") and the company's privacy policy through a check box on Gemini's website.  Freeman Decl. ¶ 7.

In February 2021, Gemini launched the Gemini Earn Program. Am. Compl. ¶ 36, Answer Preliminary Statement ¶ 4.  The Gemini Earn Program allowed participants to lend digital assets through

---

[1] Plaintiffs registered as users on the following dates:  May 16, 2016 (Kyle McKuhen), September 8, 2017 (Max J. Hastings), December 5, 2017 (Brendan Picha), February 20, 2021 (James Derek Taylor), and May 30, 2021 (Christine Calderwood). See Freeman Decl. ¶ 6; ECF No. 74, Exs. A-E.

Gemini's online platform to Genesis Global Capital ("Genesis"), a third-party cryptocurrency lending firm.  See Am. Compl. ¶ 38; Answer Preliminary Statement ¶ 6.  In return for participants lending their digital assets, they would earn interest on their digital assets.  See Am. Compl. ¶ 37.  Plaintiffs allege that Gemini represented that digital assets lent through the program could be redeemed "at any time."  Am. Compl. ¶ 37.  In order to participate in the Gemini Earn Program, a participant had to be a Gemini account holder.  Freeman Decl. ¶ 5.  Participants were also required to sign a Master Digital Asset Loan Agreement (a "Master Loan Agreement") and agree to the Gemini Earn Program Terms and Authorization Agreement (the "Authorization Agreement").  Opp. at 3.

On November 16, 2022, the same day that FTX Trading Ltd. filed for bankruptcy, Genesis announced that it was temporarily suspending redemptions and new loans.  See Am. Compl. ¶ 82.  Gemini then "suspended customer withdrawals from the Gemini Earn platform."  Am. Compl. ¶¶ 82-83.  Nearly fourteen months later, Gemini terminated the program.  See Answer Preliminary Statement ¶ 4.

**B. The Agreements**

The relationship between each plaintiff and Gemini is governed by at least three agreements: (1) the User Agreement, (2) a Master

Loan Agreement, and (3) the Authorization Agreement.[2]   See e.g., ECF No. 60, Declaration of Max J. Hastings ¶ 5.[3]  As part of the pleadings and the motion papers, the parties have submitted various versions of these agreements.[4]  The Court summarizes the relevant portions of the three agreements and their modifications.

### 1. The User Agreement

Every Gemini account holder was required to agree to the User Agreement as part of the account registration process.  Freeman Decl. ¶ 5.  The registration page included a checkbox that required

---

[2] While Tyler and Cameron Winklevoss are founders and corporate officers, neither individual defendant is a party to any of the agreements with the plaintiffs.

[3] In their reply, defendants challenge the admissibility of the facts raised in the declaration submitted by Mr. James Serritella, attorney for the plaintiffs, and the Amended Complaint that was not signed by the plaintiffs.  See ECF No. 65 at 3 ("Defendants' Reply").  A declaration submitted by a party's attorney that is not made on personal knowledge can be inadmissible hearsay.  See 59TH St. Assocs. v. Reliance Mediaworks Ltd., No. 14 Civ. 7435 (NRB), 2016 WL 861212, at *5 (S.D.N.Y. Mar. 4, 2016).  However, courts have accepted attorney declarations submitting exhibits.  See Guillen v. City of New York, No. 19 Civ. 11784 (NRB), 2023 WL 2561574, at *1 n. 2 (S.D.N.Y. Mar. 17, 2023).  Accordingly, to the extent Mr. Serritella's declaration places exhibits before the Court for consideration, they will be considered.  In addition, although the Amended Complaint was not signed by the plaintiffs, to the extent the facts therein were submitted as part of the original complaint that was signed by the initial two plaintiffs and reviewed by the named plaintiffs, see e.g., ECF Nos 24-26, those facts will be considered.

[4] The parties submitted the following versions of each agreement: (1) the User Agreement as updated on September 28, 2022, see Serritella Decl., Ex. B; (2) the User Agreement as updated on December 14, 2022, see Answer Ex. A; Freeman Decl., Ex. 3; Serritella Decl., Ex. D; (3) a Master Loan Agreement dated December 1, 2022, see Serritella Decl., Ex. A; (4) a Master Loan Agreement as updated on December 23, 2022, see Answer, Ex. B; Serritella Decl., Ex. G; (5) the Authorization Agreement as updated on July 18, 2022, Serritella Decl., Ex. C; and (6) the Authorization Agreement as updated on December 14, 2022, see Answer, Ex. C; Serritella Decl., Ex. E.  Plaintiffs represent, and defendants do not deny, that the earlier version of the agreements governed their relationship with Gemini, at least as of November 16, 2022.  See ECF No. 59 Declaration of Christine Calderwood ¶ 5; ECF No. 60 Declaration of Max J. Hastings ¶ 5; ECF No. 61 Declaration of Kyle McKuhen ¶ 5; ECF No. 62 Declaration of Brendan Picha ¶ 5; ECF No. 63 Declaration of James Derek Taylor ¶ 5 (collectively "Plaintiffs' Decls.").  Defendants acknowledge that the named plaintiffs "have opted out" of the modified Master Loan Agreement.  Answer Preliminary Statement ¶ 14.

users to attest that "[b]y creating this account, you agree to our
User Agreement and Privacy Policy" that hyperlinked the agreement.
Freeman Decl. ¶ 7, Exs. 1-2.  Unless a user clicked on the checkbox
demonstrating their agreement, their registration could not be
submitted.  Freeman Decl. ¶ 9.  Each of the named plaintiffs created
their accounts, and thus agreed to the User Agreement, between May
16, 2016 and May 30, 2021.  Freeman Decl. ¶ 6; ECF No. 74, Exs. A-
E.

The earliest version of the User Agreement submitted to the
Court contained a number of provisions that are relevant to the
current dispute.[5]  The User Agreement expressly noted that users
would agree and be bound to the User Agreement by clicking "I Agree"
during the account registration process.  <u>See</u> Serritella Decl., Ex.
B at 71.  The User Agreement clarified that even if a user did not
click "I Agree," their registration for an account or use of Gemini
"in any capacity or manner" would constitute agreement.  Serritella
Decl., Ex. B at 71.  The User Agreement also included a provision,
referred to as a merger clause, noting that the User Agreement was
the entire understanding and agreement between the parties and the
Agreement superseded prior discussions, agreements, and
understandings.  Serritella Decl., Ex. B at 75.  Gemini could amend

---

[5] While the September 28, 2022 version is the earliest submitted by the parties,
it is undisputed that the user agreement was updated at various previous times
without objection.  <u>See</u> Amend. Comp. ¶ 135; Answer Preliminary Statement ¶¶ 12,
14, 16.

the User Agreement at any time and users would agree to the amendments by logging in to their accounts. Serritella Decl., Ex. B at 2-3. The September 28, 2022 version of the User Agreement also contained a bolded section on the second page stating:

> **Please note that the section on Dispute Resolution contains an arbitration clause and class action waiver. By agreeing to this User Agreement, you agree to resolve all disputes through binding individual arbitration, which means that you waive any right to have the dispute decided by a judge or jury, and you waive any right to participate in collective action, whether that be a class action, class arbitration, or representative action.**

Serritella Decl., Ex. B at 3 (emphasis in original).

The User Agreement's dispute resolution provision spanned four pages. Serritella Decl., Ex. B at 78-81. Among the various clauses within the provision, the parties agreed that "any controversy, claim, or dispute arising out of or relating to this User Agreement or the breach thereof or the services provided to you by Gemini shall be settled solely and exclusively by binding arbitration. . . ." Serritella Decl., Ex. B at 78. The provision also called for JAMS to administer the arbitration and that the arbitration "shall be conducted in accordance with the prevailing JAMS Streamlined Arbitration Rules & Procedures." Serritella Decl., Ex. B at 80. In addition, the parties agreed "that any dispute about the scope of this User Agreement to arbitrate and/or the arbitrability of any particular dispute shall be resolved in arbitration in accordance with this section." Serritella Decl.,

Ex. B at 78.  The clause also provided that the dispute resolution's arbitration provision "applies not just to disputes with Gemini but also . . . [to] disputes with Gemini and any other party named or added as a co-defendant along with Gemini at any time during a court action. . . ."  Serritella Decl., Ex. B at 78-79.

On December 14, 2022, Gemini issued an amended User Agreement (the "modified User Agreement").  Freeman Decl. ¶ 11.  The modified User Agreement's dispute resolution provision, now spanning eight pages, continued to require arbitration, delegated issues of arbitrability to the arbitrator, extended the provision to third parties, and waived class actions.  See Freeman Decl., Ex. 3 at 108-115.  However, the modified User Agreement called for National Arbitration and Mediation ("NAM"), not JAMs, to administer the arbitration.  Freeman Decl., Ex. 3 at 111.  The modified User Agreement also contained, in all capital letters, a provision stating that "EVEN IF YOU AND GEMINI HAVE ENTERED INTO ANY OTHER AGREEMENT, THESE DISPUTE RESOLUTION TERMS SHALL GOVERN THE RESOLUTION OF ANY AND ALL DISPUTES ARISING FROM OR RELATED TO THE RELATIONSHIP BETWEEN YOU AND GEMINI . . ."  Freeman Decl., Ex. 3 at 114 (emphasis in original).  Additional details regarding the dispute resolution procedures were also added, such as the requirement of a written notice and a waiting period before an arbitration could commence.  Freeman Decl., Ex. 3 at 108-110.

After the modifications to the User Agreement were made on December 14, 2022, Gemini notified users the next day via email that the User Agreement had been modified.  Freeman Decl., ¶ 12. The email notification specifically noted that there was a modification to the "Dispute Resolution provision."  Freeman Decl., Ex. 4.  After the modifications, the Gemini sign-in page also contained language that notified users of the change to the User Agreement, including the Dispute Resolution provision, and notified users that "[b]y clicking 'Sign In' below, I agree to Gemini's USER AGREEMENT and PRIVACY POLICY" with a hyperlink to the documents. Freeman Decl., Ex. 5.  Plaintiffs signed into their Gemini accounts between December 16, 2022 and December 25, 2022.[6]  Freeman Decl. ¶ 14; ECF No. 74, Ex. F at 3-5.

### 2. The Master Loan Agreements

Every Gemini Earn Program participant was required to sign a Master Loan Agreement to participate in the program.  Opp. at 3. The parties to the Master Loan Agreement included the user who lent the digital assets, Genesis, and Gemini, acting as the custodian for the user.  Am. Compl. ¶ 38.

---

[6] In his declaration, Gemini's Director of Compliance alleges that logs for each plaintiff shows that they logged into their Gemini account on:  December 16, 2022 (James Taylor and Christine Calderwood), December 20, 2022 (Kyle McKuhen), December 23, 2022 (Max J. Hastings), and December 25, 2022 (Brendan Picha). Freeman Decl. ¶ 14.  Defendants have submitted the Gemini data logs reflecting the above information, except that Christine Calderwood logged on to the Gemini account as early as December 15, 2022. See ECF No. 74 Ex. F at 3-5.  In addition, all named plaintiffs have logged on a number of additional times since.  See id.

The earliest version of a Master Loan Agreement submitted to this Court is dated December 1, 2022. Serritella Decl., Ex. A. The "Governing Law; Dispute Resolution" provision of the Master Loan Agreement provides:

> This Agreement is governed by, and shall be construed and enforced under, the laws of the State of New York without regard to any choice or conflict of laws rules. If a dispute arises out of or relates to this Agreement, or the breach thereof, and if said dispute cannot be settled through negotiation it shall be finally resolved by arbitration administered in the County of New York, State of New York by the American Arbitration Association under its Commercial Arbitration Rules, or such other applicable arbitration body as required by law or regulation, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. The parties agree to waive their rights to a jury trial. If any proceeding is brought for the enforcement of this Agreement, then the successful or prevailing party shall be entitled to recover attorneys' fees and other costs incurred in such proceeding in addition to any other relief to which it may be entitled.

Serritella Decl., Ex. A at 12–13. The Master Loan Agreement also contained a provision that the Agreement was the entire agreement among the parties and "supersedes any prior negotiations, understandings and agreements." Serritella Decl., Ex. A at 15. Any modifications to the Master Loan Agreement would be effective "only when reduced to writing and signed by both parties hereto." Serritella Decl., Ex. A at 14.

Gemini sought to modify the Master Loan Agreements on December 23, 2022. See Plaintiffs' Decls. ¶ 8. Gemini sent Gemini Earn participants an email noting that any participant that did not want

to be bound by the modified agreement "should not access or use Gemini and . . . send an email" to Gemini's customer support. Serritella Decl., Ex. F at 1-2. Among the modified provisions, the dispute resolution provision required NAM to administer the arbitration instead of the American Arbitration Association ("AAA"). Serritella Decl., Ex. G at 12-13. Gemini also added a clause to the dispute resolution provision stating "[n]othing in this dispute resolution provision is intended to supersede the dispute resolution provisions in any separate agreements between Lender and Custodian, including, but not limited to, Gemini's User Agreement and the [Authorization Agreement]." Serritella Decl., Ex. G at 12. The named plaintiffs opted out of the Master Loan Agreement modifications. See Answer Preliminary Statement ¶ 14.

### 3. The Authorization Agreement

Every Gemini Earn Program participant was also required to agree to the Authorization Agreement. Opp. at 3. The earlier version of the Authorization Agreement provided:

> This Authorization Agreement supersedes any other agreement between the parties or any representations made by one party to the other, whether oral or in writing, concerning Loans . . . . The Authorization Agreement shall be governed and construed in accordance with the laws of The State of New York. Any controversy, claim, or dispute arising out of or related to this Authorization Agreement or the breach thereof shall be settled solely and exclusively by binding arbitration held in New York, New York, administered by JAMS and conducted in accordance with the dispute resolution provisions set forth in our User Agreement. You agree to keep any arbitration strictly confidential.

Serritella Decl., Ex. C at 12.  Under the Authorization Agreement, Gemini reserved the right to update the agreement and would notify users of "material updates via email or through our Program user interface."  Id.  Acceptance of the updates would be shown through "continued participation in our Program."  Id. at 4, 12.

Gemini also sought to modify the Authorization Agreement in December 2022.  See Plaintiffs' Decls. ¶ 9.  Similar to the modifications to the User Agreement, the revisions to the dispute resolution provision now required NAM, instead of JAMs, to administer the arbitration and listed a number of procedures that were required before an arbitration could commence.  Serritella Decl., Ex. E at 12-13.  The modified Authorization Agreement also included additional provisions such as a class action waiver.  Id. at 15.

**C. Procedural History**

On December 27, 2022, plaintiffs Brendan Picha and Max J. Hastings filed a purported securities class action complaint individually and on behalf of all others similarly situated against defendants.  ECF No. 1.  In that complaint, plaintiffs Picha and Hastings alleged that Gemini was engaged in offering and selling unregistered securities and made false and misleading statements to investors, while concealing the risks associated with those securities.  Id. ¶¶ 1, 3, 33.

On January 10, 2023, defendants filed their answer.  See ECF
No. 12.  That same day, defendants sought leave to file a motion
to compel arbitration, which plaintiffs opposed.  See ECF Nos. 13-
14.  Thereafter, the Court received four applications to appoint
lead plaintiffs and counsel.  See ECF Nos. 18, 28, 32, 38.  On
March 2, 2023, the Court granted defendants' application to file
a motion to compel arbitration and stayed the determination of
lead plaintiffs and counsel until the motion to compel arbitration
was resolved.  See ECF No. 42.  Plaintiffs were also granted leave
to amend their complaint, which they did on March 17, 2023.  See
ECF No. 47.

The amended complaint added additional named plaintiffs Kyle
McKuhen, James Derek Taylor, and Christine Calderwood and included
additional allegations that Gemini sought to change the dispute
resolution provisions in various agreements after users' assets
were frozen.  See Am. Compl. ¶¶ 10-12, 133-47, 227-32.  The amended
complaint asserts eleven causes of action, namely: (1) violations
of Sections 10b-5 of the Exchange Act and Rule 10b-5 against
Gemini; (2) contracting for the purchase and sale of securities
while operating an unregistered exchange in violation of Sections
5 and 29(b) of the Exchange Act against Gemini; (3) failing to
register as a broker or dealer in violation of Sections 15(a)(1)
and 29(b) of the Exchange Act against Gemini; (4) control person
liability under Section 20 of the Exchange Act against the

individual defendants; (5) offering and selling unregistered securities in violation of Sections 5 and 12(a)(1) of the Securities Act against Gemini; (6) control person liability under Section 15 of the Securities Act against the individual defendants; (7) common law fraud against Gemini; (8) aiding and abetting a fraud against the individual defendants; (9) negligent misrepresentation against Gemini; (10) unjust enrichment against Gemini, and (11) a declaratory judgment that there is no controlling arbitration agreement against all defendants. Plaintiffs seek a declaratory judgment; compensatory, special, consequential, punitive and exemplary damages; injunctive relief; statutory relief; and attorneys' fees and costs. See id.

On April 7, 2023, defendants filed this motion to compel arbitration pursuant to the modified User Agreement and to stay the proceeding pending the outcome of arbitration. See ECF No. 51. On May 5, 2023, plaintiffs filed an opposition to defendants' motion, in which it asked the Court to deny the motion because "[d]efendants have not shown that any of the [p]laintiffs ever agreed to the terms they are now seeking to enforce" to arbitrate the asserted claims and have not established their "entitlement to a stay of proceedings." Opp. at 2. Defendants filed a reply in

support of their motion on May 19, 2023.  See Defendants' Reply. Oral argument was held on February 6, 2024.[7]

Following oral argument, four of the five plaintiffs decided to file an arbitration demand before the AAA against defendants under the Master Loan Agreement, apparently contradicting the argument made in this motion that there was never an agreement to arbitrate because of the varying provisions across the different agreements.  See ECF No. 75.  Defendants have not withdrawn their motion to compel arbitration because they seek to compel arbitration under the Gemini User Agreement.  See ECF No. 76.  This Memorandum and Order addresses defendants' motion that is before the Court, namely, whether defendants can compel arbitration under the User Agreement.  Ms. Calderwood also requests to withdraw as a class representative, see ECF No. 77, which is granted.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable," 9 U.S.C. § 2,

---

[7] After oral argument, each party made additional submissions to the Court. Plaintiffs submitted a supplemental letter clarifying to the Court their position during oral argument that Gemini's amendments to its agreements were invalid under New York law.  See ECF No. 73.  Defendants submitted Gemini Trust Company's data logs showing when the named plaintiffs signed into their Gemini accounts.  See ECF No. 74.  The parties also provided various letters to the Court regarding plaintiffs' subsequent arbitration filing.  See ECF Nos. 75-77, 80.

and that a party may petition the district court for an order directing that "arbitration proceed in the manner provided for in such agreement," 9 U.S.C. § 4.  The FAA "embod[ies] [a] national policy favoring arbitration." Nicosia v. Amazon.com, Inc., 834 F. 3d 220, 228 (2d Cir. 2016).  "This policy is founded on a desire to preserve the parties' ability to agree to arbitrate, rather than litigate disputes." Id. (alteration omitted).  "But the FAA does not require parties to arbitrate when they have not agreed to do so." Id.; see also Ragone v. Atlantic Video at Manhattan Ctr., 595 F. 3d 115, 126 (2d Cir. 2010) ("[A]rbitration is a matter of contract, and therefore a party cannot be required to submit to an arbitration any dispute which [it] has not agreed so to submit."). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original).

The Court must first decide "whether a valid arbitration agreement exists." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 530 (2019).  This includes "[q]uestions concerning the formation and existence of an arbitration agreement." Olin Holdings Ltd. v. Libya, 73 F. 4th 92, 101 (2d Cir. 2023); see also Meyer v. Uber Techs., Inc., 868 F. 3d 66, 73 (2d Cir. 2017).  As it is defendants who seek to compel

arbitration, they bear the initial burden to show that an agreement to arbitrate exists as determined by state contract law.  See Zachman v. Hudson Valley Fed. Credit Union, 49 F. 4th 95, 101-102 (2d Cir. 2022) (noting that "[t]his burden does not require the moving party to show that the agreement would be enforceable—only that an agreement to arbitrate existed.").  The burden then shifts to the plaintiffs, who oppose arbitration, to show that the agreement is inapplicable or invalid.  See id. at 102.  This analysis is guided by "state contract law principles."[8] Abdullayeva v. Attending Homecare Servs. LLC, 928 F. 3d 218, 222 (2d Cir. 2019) (internal citations and quotation marks omitted). Next, the Court must decide "whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement."  Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F. 3d 219, 226 (2d Cir. 2001).

    In deciding a motion to compel arbitration, "courts apply a standard similar to that applicable for a motion for summary judgment," considering "all relevant, admissible evidence by the parties" and "draw[ing] all reasonable inferences in favor of the

---

[8] The Court applies New York law to this dispute.  Defendants note that the three agreements all provide a choice of law provision that calls for New York law.  In addition, the parties rely on it in their submissions to the Court. See e.g., Clarex Ltd. v. Natixis Sec. Am. LLC, No. 12 Civ. 7908 (PAE), 2013 WL 2631043, at *2 (S.D.N.Y. June 11, 2013) ("[T]he Court applies New York law . . . because all parties apply New York law in their submissions: Where 'the parties' briefs assume that New York law controls . . . such implied consent . . . is sufficient to establish choice of law.'" (internal quotation marks and alterations omitted) (quoting Wolfson v. Bruno, 844 F. Supp. 2d 348, 354 (S.D.N.Y. 2011))).

non-moving party.  <u>Nicosia</u>, 834 F. 3d at 229 (internal citations and quotation marks omitted).

### DISCUSSION

To place the following discussion in context, defendants rely on the arbitration provision of the User Agreement, which in their view was properly modified on December 14, 2022.  Plaintiffs admit that the language in the modified User Agreement, just like the language in the previous version of the User Agreement, is "broad enough to cover the lawsuit."  ECF No. 78 ("Oral Argument Tr.") 5:16-17.  However, in rebuttal, plaintiffs argue that they would not have agreed to the terms of the modified User Agreement, including its arbitration provision.  Rather, they claim that defendants have not shown they accepted the agreement modifications and point to the various agreements between the parties and their modifications to argue that there was no mutual assent to arbitrate their dispute because of procedural differences in various agreements.  They also claim that other agreements could govern this lawsuit.

The essence of the dispute between the parties is whether Gemini's actions and efforts to modify the User Agreement on December 14, 2022 were effective as a matter of law.  Accordingly, the Court first decides the threshold issue of whether the User Agreement was properly modified, and then turns to other issues

raised by the parties, many of which can be resolved by the express language of the modified User Agreement.

## A. The Agreement to Arbitrate in the User Agreement

### 1. The September 2022 User Agreement's Modification Provision

The parties do not dispute that there was a User Agreement in effect before the December 14, 2022 modification.[9] See Plaintiffs' Decls. ¶ 5. By its express terms, that version of the User Agreement contemplated that Gemini had "the right to change any of these terms and conditions at any time" and stated that "following any change to this User Agreement, your login or API Authentication, as applicable, shall constitute your agreement to the amended User Agreement by and between you and [Gemini], and you agree to be legally bound by its terms and conditions as amended." Serritella Decl., Ex. B at 2-3.

Plaintiffs received notice of the December 14, 2022 modifications at least twice. First, Gemini sent users an email to their registered email address on December 15, 2022 noting that

---

[9] In fact, plaintiffs concede that if an investor did not accept the modified User Agreement, "they may be subject to the [User Agreement]." Plaintiffs Opp. at 6. The parties' agreement that there was a User Agreement in effect before December 14, 2022 makes it unnecessary to decide whether the plaintiffs agreed to the User Agreement when they initially registered for their accounts or at the time of any of the modifications before the December 14, 2022 modifications. For completeness however, the Court notes that the design of Gemini's account registration page, the clear hyperlink to the User Agreement, and the fact that a prospective user could not move forward in the registration process without selecting the checkbox agreeing to the User Agreement are design features that comport with the factors outlined in cases in the Second Circuit upholding these "clickwrap" agreements. See Meyer, 868 F. 3d 66 at 74-75; Sultan v. Coinbase, Inc., 354 F. Supp. 3d 156, 161 (E.D.N.Y. 2019).

18

"[o]ur User Agreement has changed, including the Dispute Resolution provision." Freeman Decl., Ex. 4. Second, the Gemini login page was updated after December 14, 2022 to notify users of the modifications to the User Agreement. Plaintiffs then signed into their accounts, see Freeman Decl. ¶ 14; ECF No. 74 Ex. F at 3-5, thus assenting to the modifications.[10]

### 2. The procedure provided for in the unmodified User Agreement, and followed by Gemini on December 14, 2022, is consistent with applicable law.

As courts in the Second Circuit have repeatedly held, an arbitration agreement between the parties can be amended by its express terms. See Kai Peng v. Uber Techs., Inc., 237 F. Supp. 3d 36, 51 (E.D.N.Y. 2017) (collecting cases). Significantly, a party is not required to have actual notice of the terms of an agreement to be bound by its contents. Instead, New York law requires that the parties be on inquiry notice of the terms of the agreement.

---

[10] Plaintiffs argued in their papers that the statements of Gemini's Director of Compliance "do not meet the evidentiary requirements to compel arbitration" and noted that defendants had not produced the data logs or any electronically signed versions of the agreements. Opp. at 16. Since then, defendants have submitted "screenshots from Gemini's system that show when the individual user signed up for a Gemini account and the date and time of that user's last sign in." ECF No. 74. Defendants have also submitted the specific dates each plaintiff has logged in to their Gemini account between January 1, 2022 and February 7, 2024. ECF No. 74 at Ex. F. With this information now in the record, any argument about the sufficiency of the declaration of Gemini's Director of Compliance is moot. In the plaintiffs' declarations addressing whether they consented to the modifications, they never specifically denied signing on to their accounts after December 14, 2022, see Oral Argument Tr. 9:15-19, but limited their arguments to the failure of the defendants to submit the underlying records. Now that the defendants have submitted that data evidence, it is clear why none of the plaintiffs were prepared to swear that they have not signed in to their Gemini accounts.

See Meyer, 868 F. 3d at 74-75; Hidalgo v. Amateur Athletic Union
of United States, Inc., 468 F. Supp. 3d 646, 658 (S.D.N.Y. 2020);
Feld v. Postmates, Inc., 442 F. Supp. 3d 825, 829-30 (S.D.N.Y.
2020); Sultan, 354 F. Supp. 3d at 159-60; Wu v. Uber Techs., Inc.,
186 N.Y.S.3d 500, 531-32 (N.Y. Sup. Ct. 2022), aff'd, 197 N.Y.S.3d
1 (N.Y. App. Div. 2023).

The Second Circuit recently summarized this standard, stating
that a party is under inquiry notice of the terms of an agreement
if the reasonably prudent user would have been on notice of the
terms and the user unambiguously manifested assent. See Edmundson
v. Klarna, Inc., 85 F. 4th 695, 703 (2d Cir. 2023). Relevant here,
the Second Circuit noted that, "where an internet or smartphone
user does not explicitly say 'I agree' to the contractual terms"
a court may consider: "(1) whether the interface clearly warned
the user that taking a specific action would constitute assent to
certain terms . . . ; (2) whether notice of the contractual terms
was presented to the consumer in a location on the interface and
at time when the consumer would expect to receive such terms . . .;
and (3) the course of dealing between the parties, including
whether the contract terms were conspicuously presented to the
consumer at each use of the offeror's service and the consumer's
conduct in response to the repeated presentation of conspicuous

terms." Id. at 704-05 (internal citations and quotation marks omitted).[11]

Here, the reasonably prudent user would have been on notice of the modifications to the User Agreement from the updates to the Gemini webpage. Specifically, the Gemini webpage, which is not cluttered, expressly noted that the dispute resolution provision of the User Agreement was amended and that "[b]y clicking 'Sign In' below, I agree to Gemini's USER AGREEMENT and Privacy Policy" and provided a hyperlink to the modified User Agreement in capital letters and blue font, just above the sign-in button. See Freeman Dec. Ex. 5 (emphasis in original). Under the totality of the circumstances, the website provided reasonably conspicuous notice of the modified terms. The reasonably prudent user would be on notice that the dispute resolution provision had changed and that signing into their account would constitute unambiguous acceptance of its terms.[12]

Plaintiffs' argument that defendants cannot show that plaintiffs "ever accessed the site containing the terms" of the User Agreement to review and agree to its terms is unavailing.

_____

[11] Plaintiffs argue that cases "regarding click- or browsewrap-based agreements" are inapposite here because there are a number of different agreements and modifications at issue. Opp. at 17. Plaintiffs cite no case law for this contention. In the absence of any case law, the Court declines to adopt this argument.
[12] The Court reaches this conclusion on the basis of the events of December 14, 2022 alone. However, this was not the first time the User Agreement was modified over the course of plaintiffs' relationship with Gemini. See Answer Preliminary Statement ¶ 12. It is worth noting that plaintiffs do not argue that any of the prior modifications to the User Agreement were defective.

Plaintiffs cite <u>Resorb Networks Inc., v. YouNow.com, et al.,</u> for the proposition that New York courts do not uphold arbitration agreements where only data logs were provided as evidence that the parties agreed to arbitrate.  51 Misc. 3d 975 (N.Y. Sup. Ct. 2016). But plaintiffs misread that case.  In <u>Resorb Networks</u>, the court declined to allow "tracking evidence show[ing] continuous access" that would include a website's Terms of Use page to demonstrate that a user had actual notice of the terms of an agreement.  <u>Id.</u> at 982-83.  In contrast, the data logs referenced in Mr. Freeman's declaration and before the Court are not used to show that plaintiffs had actual knowledge of the contents of the User Agreement.  Rather, they are used to demonstrate that the plaintiffs signed into their Gemini account, thereby placing them on inquiry notice and resulting in their acceptance of the terms of both the User Agreement in effect at the time they registered for an account and the modified User Agreement.  Thus, the procedure provided for in the unmodified User Agreement and followed by Gemini on December 14, 2022 is consistent with applicable law.[13]

---

[13] Indeed, on September 7, 2023 the Supreme Court of New York granted a motion to compel arbitration, finding that Gemini highlighted the change to the dispute resolution provision by email and "on the 'log-in' screen, Gemini fully disclosed that the alternative dispute resolution provision had changed and indicated that by "signing in" users were agreeing to be bound by the revised agreement including its dispute resolution provision. The plaintiffs signed in and by doing so agreed to the terms of the revised agreement, including the agreement to arbitrate." <u>Chablaney v. Gemini Trust Co., LLC</u>, No. 650076/2023, 2023 WL 5805950, at *1 (N.Y. Sup. Ct. Sept. 7, 2023).

During oral argument and in its subsequent submission, plaintiffs argue that Gemini's modifications are invalid under New York law because they do not comport with obligations of the implied covenant of good faith and fair dealings. See ECF No. 73; Oral Argument Tr. 10:4-20. Specifically, plaintiffs argue that these changes are invalid because they "invested assets with [d]efendants in a manner analogous to depositing funds in a bank account, which they cannot reasonably be expected to ignore or abandon." ECF No. 73 at 2. Plaintiffs point to Filho v. Safra Nat'l Bank, where the Second Circuit stated that "[w]hile expressing no view on the matter, we note that unilateral changes to banking agreements—pursuant to which a bank has custody of the customer's assets—may pose different concerns than do unilateral changes to credit card agreements—which a customer may readily reject simply by ceasing to use or cancelling his or her credit card." 489 F. App'x 483, 486 n.4 (2d Cir. 2012).

While the Court understands that withdrawal limitations restricted plaintiffs from withdrawing their digital assets from the Earn program, plaintiffs ignore two key distinctions between the present case and Filho. First, the original agreement in Filho had a dispute resolution provision that "contemplated litigation in local courts" and the defendant bank sought to put in place a new agreement "simply declaring . . . that arbitration would henceforth be the sole method of dispute resolution available to

account holders." Id. at 484. Second, the Second Circuit held that the plaintiff in Filho "raised genuine questions of fact as to whether he may properly be deemed to have agreed to arbitrate his dispute with the Bank" because the plaintiff may never have received the updated agreement. Id. at 486. Here, every previous agreement between plaintiffs and Gemini required the parties to submit their disputes to arbitration and there is no question that plaintiffs agreed to arbitrate their dispute with Gemini and accepted the December 14, 2022 modifications to the User Agreement. Indeed, plaintiffs concede that the scope of either version of the User Agreement is broad enough to encompass the present dispute. Oral Argument Tr. 5:16-17. Moreover, to the extent that plaintiffs argue these modifications were made to gain an advantage in the present litigation, these modifications were made nearly two weeks before plaintiffs filed this lawsuit.[14]

### 3. Plaintiffs have not raised a genuine dispute of material fact as to whether they signed into their Gemini accounts.

Plaintiffs cannot avoid arbitration by claiming that they "never agreed to any changes to these agreements," including the modified User Agreement. Plaintiffs' Decls. ¶ 10. Moreover,

---

[14] During oral argument, plaintiffs also argued that they would be prejudiced by arbitrating before NAM because the forum does not have "the same robust protection of consumers that JAMS or AAA does." Oral Argument Tr. 12:10-12. While that may be true, as defendants noted, the parties agreed in the Master Loan Agreement that these are commercial loans, see Serritella Decl., Ex. A at 17, and courts in this Circuit have held that profit motivated cryptocurrency investment account holders are not consumers, see In re Tether & Bitfinex Crypto Asset Litig., 576 F. Supp. 3d 55, 131 n. 54 (S.D.N.Y. 2021).

plaintiffs' argument that they did not agree to the modified User Agreement is only a bare assertion that is unsupported by the record and is unavailing in the face of specific evidence provided by defendants.

As plaintiffs conceded during oral argument, nowhere in the record do plaintiffs provide any evidence or assertion that they did not sign into their accounts on or after December 14, 2022. Oral Argument Tr. 9:15-19.  Although plaintiffs' argue that the data logs should be weighed "against Plaintiffs affirmative opt-outs of the [modified Master Loan Agreement] and denials that they ever agreed to any of the modified [a]greements," Opp. at 16, Gemini's records reflects that they logged in various times since December 15, 2022.[15]  As such, plaintiffs have not met their burden, through affidavits or otherwise, to demonstrate that there is a genuine dispute of fact regarding the acceptance of the modified User Agreement.  See Moton v. Maplebear Inc., No. 15 Civ. 8879 (CM), 2016 WL 616343, at *5 (S.D.N.Y. Feb. 9, 2016).

### 4. The inconsistencies in the arbitration provisions do not demonstrate a lack of mutual assent.

Plaintiffs also attempt to avoid arbitration by invoking the various arbitration provision in each of the other two agreements.

---

[15] Gemini's records show that the named plaintiffs last logged in to their Gemini accounts on the following dates:  January 6, 2024 (Brendan Picha), January 7, 2023 (Kyle McKuhen), January 18, 2024 (Christine Calderwood), January 30, 2024 (James Taylor), and February 4, 2024 (Max J. Hasting).  See ECF No. 73 Exs. A-E.  Gemini's login data reflects that each named plaintiff logged in to their account between December 15, 2022 and December 23, 2022.  Id. at Ex. F.

They argue that there is no binding agreement to arbitrate because the inconsistencies between the agreements demonstrate that there was never mutual assent as to the essential terms of the arbitration agreement.  Plaintiffs rely on two Second Circuit cases for the proposition that a court cannot compel arbitration when there are conflicting or missing terms in a dispute resolution provision.  See Opals on Ice Lingerie v. Bodylines Inc., 20 F. 3d 362 (2d Cir. 2003); Dreyfuss v. Etelecare Global Solutions-US Inc., 349 F. App'x. 551 (2d Cir. 2009).

However, plaintiffs misconstrue those two clearly distinguishable cases.  First, in Opals on Ice, the Second Circuit did not compel arbitration, in part because the signature on one contract was a forgery, the parties did not produce an original version of another document signed by the parties, and other documents between the parties had conflicting clauses.  20 F. 3d at 370-372.  Given the issues of forgery, authenticity, and conflicting clauses, the Second Circuit held that no contract was ever formed.  See 20 F. 3d at 370-373.  Second, in Dreyfuss, the Second Circuit declined to compel arbitration when the contract that was provided to the court was incomplete and was a "two-page fragment" instead of a whole document.  See 349 F. App'x. at 554.[16]

---

[16] Plaintiffs also rely on a non-controlling decision applying Colorado law.  See Ragab v Howard, No. 15 Civ. 00220 (WYD)(MJW), 2015 WL 6662960, at *5 (D. Colo. Nov. 2, 2015), aff'd, 841 F. 3d 1134 (10th Cir. 2016).  Whatever persuasive authority the case applying Colorado law has, this Court must apply New York law and is bound by Second Circuit precedent.

While New York law requires a sufficiently definite a manifestation of mutual assent, see Wu, 186 N.Y.S.3d at 529, neither the arbitral forum nor arbitration procedures are essential terms which would require this Court to find that there was no meeting of the minds to arbitrate or that the agreement to arbitrate is unenforceable or invalid. Courts in the Second Circuit have upheld arbitration agreements where the parties do not expressly include the arbitral forum or other the procedural rules governing the arbitration.[17]  See Hudson Specialty Ins. Co. v. New Jersey Transit Corp., No. 15 Civ. 89 (ER), 2015 WL 3542548, at *7 (S.D.N.Y. June 5, 2015) (collecting cases); see also Wework Companies Inc. v. Zoumer, No. 16 Civ. 457 (PKC), 2016 WL 1337280, at *4 (S.D.N.Y. Apr. 5, 2016) ("The definiteness doctrine is not to be applied rigidly, and striking down a contract based on a lack of definiteness is at best a last resort.") (internal quotation marks and citations omitted).

Accordingly, plaintiffs have failed to demonstrate that the inconsistent terms between the agreements, all of which require arbitration as the means to resolve any dispute between the parties, show that there was no meeting of the minds. Thus, plaintiffs have not met their burden to show that the modified

---

[17] In addition, at least one court faced with conflicting agreements on the arbitral forum has referred the issue to the arbitrator. See Charter Commc'ns, Inc. v. Garfin, No. 20 Civ. 7049 (KPF), 2021 WL 694549, at *12-13 (S.D.N.Y. Feb. 23, 2021).

User Agreement is inapplicable or invalid.  Given that the modified User Agreement contains an express provision that its dispute resolution terms shall govern regardless of any other agreement between the parties, see Freeman Decl., Ex. 3 at 114, the Court now turns to other issues raised by the parties, many of which can be resolved by the express language of the modified User Agreement.

**B. The Individual Defendants**

In certain circumstances, the FAA allows non-signatories to compel arbitration under "traditional principles of state law." Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009) (quotations omitted).  Under New York law, "[a] third-party beneficiary's right to compel arbitration depends on the contracting parties' intent," Republic of Iraq v. ABB AG, 769 F. Supp. 2d 605, 612 (S.D.N.Y. 2011), "as expressed by the plain language of the [arbitration] provision," John Hancock Life Ins. Co. v. Wilson, 254 F. 3d 48, 58 (2d Cir. 2001).  Thus, a third-party can only compel a signatory to arbitrate a dispute if "the agreement . . . so provide[s] in express language."  Republic of Iraq, 769 F. Supp. 2d at 612 (citation omitted).

Plaintiffs argue that the individual defendants may not compel arbitration of the claims against them because they "are not individually parties to any of the [a]greements."  Opp. at 17. Defendants maintain that under the express language of the User

Agreement the individual defendants are entitled to compel arbitration. Mot. at 13. Defendants are correct.

Plaintiffs' argument is in direct conflict with the provisions of both versions of the User Agreement, which provide that the arbitration clause "applies not just to disputes between you and Gemini but also to . . . disputes with Gemini and any other party named or added as a co-defendant." Freeman Decl., Ex. 3 at 108; Serritella Decl., Ex. B at 78. Indeed, the User Agreement provides that "any such co-defendant or defendant is a third-party beneficiary entitled to enforce this arbitration provision." Freeman Decl., Ex. 3 at 108. When plaintiffs brought this action against Gemini, they named the individual defendants as co-defendants in this case and continue to do so under the Amended Complaint. Given the express language in the User Agreement, the individual defendants can compel arbitration pursuant to the modified User Agreement and the plaintiffs do not provide any evidence to the contrary.[18]

---

[18] Defendants also argue that even ignoring the User Agreement's arbitration provision, the doctrine of estoppel would also require the plaintiffs to arbitrate their claims against the individual defendants. Mot. at 13. Specifically, because the individual defendants are executive officers and founders of Gemini, the claims against them are "intertwined with the agreement the estopped party has signed." Id. (citing Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co., 271 F. 3d 403, 404 (2d Cir. 2001)) (internal citations and quotation marks omitted). Given that the Court has determined that the User Agreement's arbitration provision is a valid agreement to arbitrate that expressly extends to the individual defendants, the Court does not evaluate defendants' alternative equitable estoppel theory.

**C. Arbitrability of the Dispute**

The next question the Court must answer is whether the parties have agreed to delegate the issue of arbitrability to the arbitrator or if the arbitrability of the dispute is for judicial determination.  In determining whether a claim falls within the scope of a mandatory arbitration clause, there is a general presumption that courts, not arbitrators, decide issues of arbitrability.  Telenor Mobile Commc'ns AS v. Storm LLC, 584 F. 3d 396, 406 (2d Cir. 2009).  However, this presumption is rebutted by "clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator."  Contec Corp. v. Remote Solution, Co., 398 F. 3d 205, 208 (2d Cir. 2005) (emphasis removed) (internal quotation marks omitted).  When "the parties explicitly incorporate procedural rules that empower an arbitrator to decide issues of arbitrability, that incorporation may serve as clear and unmistakable evidence of the parties' intent to delegate arbitrability to an arbitrator." DDK Hotels, LLC v. Williams-Sanoma, Inc., 6 F. 4th 308, 318 (2d Cir. 2021).

Defendants assert that the question of arbitrability was delegated to the arbitrator.  Mot. at 10-12.  Other than arguing that the parties do not have a valid agreement to arbitrate, plaintiffs do not specifically discuss the issue of

arbitrability.[19]  "[C]hallenges to the validity of an agreement to arbitrate threshold questions of arbitrability must be explicitly addressed to that provision rather than to the arbitration agreement as a whole."  Mullo v. DoorDash, Inc., No. 22 Civ. 2430 (VEC), 2023 WL 1971897, at *3 (S.D.N.Y. Jan. 17, 2023) (internal citations omitted).

The modified User Agreement provides that "any dispute about the scope of this User Agreement to arbitrate and/or the arbitrability of any particular dispute shall be resolved in arbitration in accordance with this section."  Freeman Decl., Ex. 3 at 107.  This delegation to the arbitrator is broad and is "clear and unmistakable evidence . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator."  Contec Corp., 398 F. 3d at 208.  Thus, the language of the modified User Agreement requires that this Court leave the question of arbitrability to the arbitrator.[20]

---

[19] In fact, plaintiffs concede that "the issue of delegation . . . is not at issue here." Oral Argument Tr. at 29:10-11.

[20] Even ignoring the modified User Agreement, previous versions of all three agreements also delegate issues of arbitrability to the arbitrator. The earlier version of the Master Loan Agreement expressly incorporates the AAA's Commercial Arbitration rules. See Serritella Decl., Ex A at 11-12. While the Authorization Agreement does not incorporate the arbitral rules of JAMS directly, it states that the arbitration "will be conducted in accordance with the dispute resolution provisions set forth in our User Agreement." Serritella Decl., Ex C at 11. The earlier version of the User Agreement states that "any dispute about the scope of this User Agreement to arbitrate and/or the arbitrability of any particular dispute shall be resolved in arbitration in accordance with this section" and incorporates by reference the JAMS Streamlined Arbitration Rules and Procedures. Serritella Decl., Ex B at 77-78. The AAA, JAMS, and NAM procedures incorporated into the various versions of the agreements between the parties all grant the arbitrator the power to rule on the arbitrability of the issues presented. See e.g., AAA Commercial Arbitration Rules and Mediation

**D. Class Action Waiver**

Plaintiffs raise a number of arguments that the class action waivers in the User Agreement and modified User Agreement are invalid or immaterial because (1) the language is ambiguous; (2) the agreements conflict with the Master Loan Agreement; (3) they were prepared in anticipation of litigation and interfere with class rights under Rule 23(d); and (4) defendants have not complied with their own contractual provisions in modifying the agreements. Opp. at 17-20. The Court now addresses these arguments in turn.

Plaintiffs first argue that the class action waiver is invalid by its own language because it is ambiguous and refers to "private attorney general litigation." The class action waiver in the User Agreement states, in part, "this User Agreement does not permit class action or private attorney general litigation or arbitration of any claims brought as a plaintiff or class member in any class or representative arbitration proceeding or litigation." Serritella Decl., Ex. D at 82. The Court does not find that statement to be ambiguous. In addition, as defendants point out, courts in the Second Circuit have upheld class action waivers that

---

procedures Rule 7, available at https://www.adr.org/sites/default/files/Commercial-Rules_Web.pdf, (last visited March 5, 2024); JAMS Streamlined Arbitration Rules & Procedures Rule 8(a), available at https://www.jamsadr.com/rules-streamlined-arbitration/#Rule-8 (last visited March 5, 2024); NAM Comprehensive Dispute Resolution Rules and Procedures Rule 17(B), available at https://www.namadr.com/content/uploads/2022/04/Comprehensive-Rules-as-of-4.18.2022.pdf (last visited March 5, 2024).

mention "private attorney general."  See, e.g., Guerriero v. Sony

Elecs. Inc., No. 21 Civ. 2618 (VB), 2022 WL 736428, at *3 (S.D.N.Y.

Mar. 11, 2022).

Second, plaintiffs argue that because the Master Loan

Agreement was still in effect when the modified User Agreement was

executed, its merger clause should apply and void the class action

waiver.  Plaintiffs ignore the fact that the modified User

Agreement also contained a merger clause stating that the modified

agreement "supersede[s] any and all prior discussions, agreements,

and understandings of any kind (including without limitation any

prior versions of this User Agreement), as well as every nature

between and among you and us."  Serritella Decl., Ex. D at 75.

Because the modified User Agreement was accepted by the plaintiffs

between December 16 and December 25, the Master Loan Agreement was

an earlier in time agreement, so its merger clause does not apply.

Third, plaintiffs argue that the modified User Agreement was

prepared in anticipation of litigation and is an improper

interference with class rights under Fed. R. Civ. P. 23(d).

Plaintiffs argue that where "actual or potential coercion or

deception" is present, arbitration clauses and waivers are

voidable.  Opp. at 19 (citing Chen-Oster v. Goldman, Sachs & Co.,

449 F. Supp. 3d 216, 228 (S.D.N.Y. Mar. 26, 2020).  In Chen-Oster,

Magistrate Judge Lehrburger summarized the case specific factors

courts consider to determine if there was actual or potential

coercion or deception to void class action waivers, namely: "(1) the relative vulnerability of the putative class members; (2) evidence of actual coercion or conditions conducive to coercion; (3) whether the defendant targeted putative class members in a purposeful effort to narrow the class; (4) whether the arbitration provision was unilaterally imposed on the putative class; and (5) evidence of misleading conduct, language, or omissions."  449 F. Supp. 3d at 255.  In response, defendants note that the User Agreement was modified on December 14, 2022, before the complaint was filed.

The factors in Chen-Oster do not warrant voiding the class action waiver.  The User Agreement and its modification both contained a class action waiver.  See Freeman Decl., Ex. 3 at 113-114; Serritella Decl., Ex. B at 80-81.  While plaintiffs were not able to freely withdraw their assets from the Gemini Earn Program by then because of the withdrawal limitations in place, the September 2022 version of the User Agreement (updated well before the withdrawal limitations), which the parties agree was effective, also contained a class action waiver and cannot be said to have been coercive.  Furthermore, this complaint was not filed until December 27, thirteen days after Gemini modified the User Agreement.  Thus, there is no reason to render the class action waiver voidable.  Indeed, Chen-Oster, and every case in the Second Circuit discussed by Judge Lehrburger therein, notes that the

arbitration agreements warranting action were those changed or signed after the lawsuit was filed.  See Chen-Oster, 449 F. Supp. 3d at 255-8 (collecting cases).

Fourth, plaintiffs assert that defendants have not complied with their own contractual provisions modifying the agreements and therefore plaintiffs should not have to comply with the class action waiver.  However, as the Court found above, the User Agreement was modified pursuant to its terms.  Thus, plaintiffs' arguments that there is no valid class action waiver all fail.[21]

**E. Request for a Stay**

As detailed above, the Court refers the entire case to arbitration.  In the Second Circuit, when all claims have been referred to arbitration and a stay is requested, the court must grant the stay. See Katz v. Cellco P'ship, 794 F. 3d 341, 345 (2d Cir. 2015).  Accordingly, the case is stayed pending the outcome of the arbitration.

**CONCLUSION**

In sum, defendants have established that an agreement to arbitrate the present dispute exists and extends to the individual defendants.  Plaintiffs have not shown that there is a genuine dispute of material fact to avoid compelling arbitration.

---

[21] The Court notes that given that every single individual agreement between the parties requires arbitration, class arbitration would not be available "unless there is a contractual basis for concluding that the party agreed to do so." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 684 (2010).

Accordingly, defendants' motion to compel arbitration is granted and the case is stayed.   The Clerk of Court is respectfully instructed to terminate the motion at ECF No. 51 and stay the case.

**SO ORDERED.**

Dated:      March 5, 2024
            New York, New York

                                    _____
                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE